IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VARSITY SPIRIT LLC, VARSITY BRANDS, LLC, and VARSITY SPIRIT  FASHIONS & SUPPLIES, LLC, | § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:21-CV-0432-D |
| VS. | § § § | *This is the unsealed version of a memorandum opinion and order filed under seal on September 17, 2021.  For citation purposes, the correct date of the memorandum opinion and order is September 17, 2021. |
| VARSITY TUTORS, LLC, | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

In this lawsuit involving federal- and state-law trademark infringement and related

claims, defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or,

alternatively, for a more definite statement under Rule 12(e).  For the reasons explained, the

court grants defendant's motion to dismiss under Rule 12(b)(1), grants in part and denies in

part its Rule 12(b)(6) motion, and denies its motion for a more definite statement under Rule

12(e), and it grants plaintiffs leave to replead.

I

This is an action by plaintiffs Varsity Spirit LLC ("Varsity Spirit"), Varsity Brands,

LLC ("Varsity Brands"), and Varsity Spirit Fashions & Supplies, LLC ("Varsity Spirit

Fashions") (collectively, "Varsity," unless the context indicates otherwise) against defendant

Varsity Tutors, LLC ("Varsity Tutors").  Varsity seeks to recover on the following claims:

trademark infringement, under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); trademark

infringement, false designation of origin, passing off, and unfair competition, under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution, under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and trademark infringement, unfair competition, dilution, and breach of contract, under Texas law.

Varsity is a company that hosts cheerleading and dance tournaments and camps.[1]  Its annual competitions feature more than one million competitors, and its camp offerings, which include cheer, dance, and band instruction, provide training to over 350,000 students nationwide, making Varsity the "largest camp operator in the world."  ECF No. 29 at 6, ¶ 17.[2] In addition to its hosted competitions and camps, Varsity sells apparel to over one million athletes—making it the world's leading designer and manufacturer of cheerleading and dance uniforms.  Varsity also provides sports management training through online and in-person seminars to educators, coaches, and gym owners.

Varsity has registered United States trademarks for its "VARSITY" marks and its unique "V" logo.  These marks have become "widely recognized by the general consuming public" and "associated exclusively with Varsity."  *Id.* at 15, ¶ 34.  The marks have been used to promote Varsity's brand and feature on all of its advertising materials, and they

---

[1]In deciding Varsity Tutors' Rule 12(b)(1) and 12(b)(6) motions, the court construes the first amended complaint in the light most favorable to Varsity, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Varsity's favor.  *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[2]The court is citing the first amended complaint in this manner because it was not included in an appendix, as the local civil rules require.  *See infra* note 4.

appear at Varsity's events and camps as well.

Before the present litigation started, Varsity objected to Varsity Tutors' use of the "VARSITY TUTORS" mark and "V" logo.  To resolve the parties' disagreement, they entered into a settlement agreement ("Settlement Agreement").  The Settlement Agreement defines authorized and unauthorized uses of Varsity Tutors' marks or any other marks it plans to use.[3]  Among its provisions, the Settlement Agreement precludes Varsity Tutors from using a mark with the word "varsity" alone or depicted with only a design, or using a mark that is confusingly similar to Varsity's marks.

> Varsity Tutors . . . will not use, register, or seek to register the word "VARSITY" alone or depicted with only a design . . . and will not otherwise use, register, or seek to register any term or any other mark confusingly similar to the VARSITY Marks as, or as part of, any trade name, corporate name, trademark, service mark, domain name, or other designation in connection with the offering, provision, advertisement, promotion, manufacture, sale, or distribution of any product and/or service.

ECF No. 29 at 39, ¶ 2.[4]

---

[3]When reviewing a motion to dismiss, the court may consider attachments to the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *accord Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).  In this case, the Settlement Agreement is attached to Varsity's first amended complaint.  Therefore, the court may consider the information contained within the Settlement Agreement when assessing the sufficiency of Varsity's allegations and ruling on Varsity Tutors' motions to dismiss.  *See, e.g., Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006); *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003).

[4]Varsity should have included the Settlement Agreement (which is attached as an exhibit to the first amended complaint) in an appendix and cited the appendix in the manner that the local civil rules require.  N.D. Tex. Civ. R. 7.1(i)(1) provides that "[a] party who relies on materials—including depositions, documents, electronically stored information,

The Settlement Agreement authorizes Varsity Tutors to use any mark where the word "varsity" is followed by "tutors," unless the mark is used in relation to athletic or cheerleading apparel, cheerleading camps or competition, or academic graduation.

> (a) The VT parties may use, seek to register, or register, or authorize others to use, seek to register, or register the word "VARSITY" only immediately followed by the word "TUTORS" to form a unitary mark, wherein the word "VARSITY" shall appear no larger than the word "TUTORS" and shall not otherwise be emphasized over the word "TUTORS", whether by font, color, size or stylization; and
> (b) The VT Parties shall not seek to register or register, or authorize others to use, seek to register, or register any mark containing the word "VARSITY" in connection with goods and services relating to any of the following:
>> A. athletic team apparel, cheerleading apparel, and/or athletic equipment;
>> B. cheerleading camps, cheerleading clinics, and/or cheerleading competitions;
>> C. academic graduation (school/university) regalia and/or related graduation commemorative products, including class rings, jewelry, and/or yearbooks.

ECF No. 29 at 39-40, ¶ 3.

Finally, in the Settlement Agreement Varsity Tutors expressly warrants that it does not own any domain names or pending applications that are not in compliance with specified

---

affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials—to support or oppose a motion must include the materials in an appendix." Rule 7.2(e) states that "[i]f a party's motion or response is accompanied by an appendix, the party's brief must include citations to each page of the appendix that supports each assertion that the party makes concerning any documentary or non-documentary materials on which the party relies to support or oppose the motion." Because the first amended complaint and its exhibits are easily located in the record and can be cited accurately based on their ECF pagination, the court will not require Varsity to correct this error.

provisions of the Settlement Agreement.

> Varsity Tutors hereby warrants, and represents to the best of its knowledge the following:
>
> *     *     *
>
> > (b) that it does not own any domain names that are not in compliance with Paragraphs 2 through 5 of this Agreement;
> > (c) that it does not own any pending applications or registrations of marks that are not in compliance with Paragraphs 2 through 6 of this agreement, except for the Registration.
>
> *     *     *

ECF No. 29 at 41-42, ¶ 8.

Varsity alleges that Varsity Tutors breached the Settlement Agreement and that its unauthorized uses of the mark violate federal and state trademark law. It asserts that Varsity Tutors breached this agreement by violating the express warranties it made relating to trademark applications and domain names and offering sports management training and dance classes.[5] Varsity avers that Varsity Tutors' affiliate company's use of a "V" logo for

---

[5]Varsity also appears to allege in its first amended complaint that Varsity Tutors' use of the color blue for its trademark was likely to cause confusion with Varsity's marks and therefore violated ¶ 2 of the Settlement Agreement (prohibiting use of marks "confusingly similar" to Varsity's marks). Later, however, Varsity makes clear in its brief in opposition that its allegations with regard to the color blue "do[] not allege infringement based on the Defendant's use of the color blue. Rather, Defendant's uses of VARSITY in blue adds to the likelihood of confusion." Ps. Br. at 10. Indeed, Varsity's brief does not respond to—and appears to agree with— Varsity Tutors' argument that "the Settlement Agreement . . . does not restrict use of the color blue." D. Mot. to Dis. at 19. Accordingly, it appears that Varsity does not intend to press the allegation that the use of the color blue alone violates ¶ 2 of the agreement. The court therefore does not address this allegation.

- 5 -

its company violates the terms of the Settlement Agreement.  Based on these alleged breaches, Varsity sent demand letters to Varsity Tutors demanding compliance with the Settlement Agreement.

When Varsity Tutors failed to comply after receiving the demand letters, Varsity Spirit filed this suit.[6]  Varsity Tutors moved to dismiss, relying on many of the grounds that it asserts in its present motion.  Varsity Spirit then amended its complaint, adding Varsity Brands and Varsity Spirit Fashions as plaintiffs.

Varsity Tutors now moves under Rules 12(b)(1) and 12(b)(6) to dismiss Varsity's first amended complaint, contending that Varsity has failed to state a claim on which relief can be granted.  Alternatively, Varsity Tutors moves for a more definite statement under Rule 12(e).  Varsity opposes the motions.  The court is deciding the motions on the briefing.

II

Varsity Tutors moves to dismiss under Rule 12(b)(1) on the ground that the court lacks subject matter jurisdiction over some of the claims of Varsity Brands and Varsity Spirit Fashions for lack of standing.[7]

---

[6]Varsity Spirit asserted these claims: trademark infringement, under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); trademark infringement, false designation of origin, passing off, and unfair competition, under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution, under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and trademark infringement, unfair competition, dilution, and breach of contract, under Texas law.

[7]*See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12 (b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (citations omitted).

B

Varsity Tutors contends that the court lacks subject matter jurisdiction over Varsity Brands's and Varsity Spirit Fashions' claims under 15 U.S.C. § 1114(1) (count one), 15 U.S.C. §  1125(c) (count four), and trademark infringement, unfair competition, and trademark dilution under Texas law (counts three and five) for lack of standing. Varsity Tutors posits that, despite what Varsity alleges in its first amended complaint, the public record shows that Varsity Brands and Varsity Spirit Fashions do not own the trademarks in

question.  Varsity Tutors requests that the court take judicial notice of the United States Patent and Trademark Office ("USPTO") registration records.  Varsity Tutors also maintains in its reply brief that Varsity has conceded this argument by not responding to it.

Varsity responds that Varsity Tutors' motion has not raised a valid concern over Varsity's trademark infringement and dilution claims.  Varsity maintains that "[a]t the very least, the Court has subject matter jurisdiction over [Varsity Spirit's] trademark infringement and dilution claims . . . because [Varsity Spirit] owns the VARSITY Marks at issue."  Ps. Br. at 23. Varsity also contends that the specific relationship among all of the Varsity plaintiffs is "a matter for discovery."  *Id.*

## C

### 1

A plaintiff must establish ownership of a trademark to have standing to sue under 15 U.S.C. § 1114(1)*. TGI Friday's Inc. v. Great Nw. Rests., Inc*., 652 F.Supp.2d 763, 767 (N.D. Tex. 2009) (Fitzwater, C.J.) ("To succeed on a trademark infringement claim [under 15 U.S.C. § 1114], a plaintiff first must show ownership of a legally protectable mark, and then it must establish infringement of the mark."); *see also Flu Shots of Tex., Ltd. v. Lopez*, 2014 WL 1327706, at *6 (N.D. Tex. Apr. 3, 2014) (O'Connor, J.) ("Absent ownership of [the trademark], the Court concludes that [plaintiff] lacks standing to assert its federal trademark infringement claims.").  The same is true for a dilution claim under § 1125(c)(1), see 15 U.S.C. § 1125(c)(1) ("[T]he *owner* of a famous mark . . . shall be entitled to an injunction.") (emphasis added); *ICEE Distributors, Inc. v. J & J Snack Foods Corp*., 325 F.3d 586, 599

- 8 -

(5th Cir. 2003) ("Because [plaintiff] is not the owner of the marks, but merely an exclusive licensee, it has no standing to sue under the Dilution Act."); a claim for trademark infringement and unfair competition under Texas law, *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions.") (internal quotation marks omitted); *John Crane Production Solutions, Inc. v. R2R & D, LLC*, 2012 WL 1571080, at *2 n.3 (N.D. Tex. May 4, 2012) (Fitzwater, C.J.) (holding that the same test for trademark infringement under federal and Texas law applies to both); and a dilution claim under Texas law, see Tex. Bus. & Com. Code Ann. § 16.103 (West 2021) ("[T]he *owner* of a mark that is famous . . . is entitled to enjoin another person's commercial use of a mark or trade name.").

2

Varsity Tutors contends that Varsity Brands and Varsity Spirit Fashions have conceded that they do not have standing to assert some of their claims because they are not owners of the trademarks.

A party may implicitly concede an argument by not responding to it. *See U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 321 (5th Cir. 2016) ("[The Plaintiff] does not address the argument and implicitly concedes that his claims were time-barred."). A party may also concede an issue simply by admitting its truth or refusing to contest it. *E.g., Robinson v. Deutsche Bank Nat'l Tr. Co. as Tr. for Registered Holders of Long Beach Mortg. Loan Tr. 2005-WL1 , Asset-Backed Certificates, Series 2005-WL1*, 2019 WL 4139399, at *2

(N.D. Tex. Aug. 30, 2019) (Fitzwater, J.) ("Robinson concedes in her summary judgment response that 'there is no private right of action under the Property Code.'").  The first amended complaint alleges that Varsity Spirit, Varsity Brands, and Varsity Spirit Fashions own the marks at issue.  In Varsity's response brief, it states that Varsity Tutors "does not raise any valid concerns regarding standing that would remove this Court's subject matter jurisdiction over Varsity's trademark and dilution claims," and that "[t]he specific relationship between the parties is a matter for discovery."  Ps. Br. at 23.  But Varsity also asserts that "[Varsity Spirit] owns the VARSITY Marks at issue," thereby appearing to implicitly concede that Varsity Brands and Varsity Spirit Fashions do *not* own the marks.

The court cannot conclude from the ambiguous briefing that Varsity Brands and Varsity Spirit Fashions have unequivocally conceded that they do not the own the Varsity trademarks at issue.  But the court need not resolve this question because it can take judicial notice that Varsity Brands and Varsity Spirit Fashions do not, in fact, own these trademarks.  In ruling on a motion to dismiss under Rule 12(b)(1), the court may take judicial notice of an adjudicative fact.  *See Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 209 (S.D. Tex. 2008) (Rosenthal, J.) ("[U]nder Rule 12(b)(1) . . . analysis is properly limited to the pleadings, attachments, and matters appropriate for judicial notice.").  Ownership of a trademark registration is an adjudicative fact.  *See, e.g., Choice Hotels Int'l, Inc. v. Goldmark Hosp.*, *LLC*, 2014 WL 642731, at *3 n.4 (N.D. Tex. Feb. 19, 2014) (Fitzwater, C.J.) (taking

judicial notice of trademark registrations).[8]  The court holds that most of the relevant trademarks that Varsity cites in its first amended complaint are owned by Varsity Spirit, not by Varsity Brands or Varsity Spirit Fashions.[9]  One mark appears to be owned by none of the plaintiffs.[10]

3

Varsity asserts that the exact relationship among Varsity's multiple corporate entities is "a matter for discovery," implying that ownership of the marks by Varsity Spirit may also include ownership by Varsity Brands and/or Varsity Spirit Fashions.  But the court cannot conclude from the well-pleaded allegations of the first amended complaint that Varsity Spirit, Varsity Brands, and Varsity Spirit Fashions are related corporate identities such that ownership of the trademarks by Varsity Spirit includes ownership by Varsity Brands and Varsity Spirit Fashions.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual

---

[8]Under Fed. R. Evid. 201(b), a judicially noticed fact must be one not subject to reasonable dispute in that it (1) is generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

[9]"VARSITY.COM" Trademark (U.S. Reg. No. 3689696), "VARSITY.COM" Trademark (U.S. Reg. No. 3418764), "VARSITY TV" Trademark (U.S. Reg. No. 3858342), "VARSITY TV" Trademark (U.S. Reg. No. 3920302), "VARSITY ALLSTAR" Trademark (U.S. Reg. No. 4258636), "VARSITY" Trademark (U.S. Reg. No. 3696209), "VARSITY" Trademark (U.S. Reg. No. 3436493), "VARSITY BRANDS IMPACT" Trademark (U.S. Reg. No. 5894092), "VARSITY UNIVERSITY" Trademark (U.S. Reg. No. 3797635), "VARSITY UNIVERSITY" Trademark (U.S. Reg. No. 4823834), "VARSITY ALL STAR" Trademark (U.S. Reg. No. 4607865),"V" Trademark (U.S. Reg. No. 3782739).

[10]"VARSITY SPIRIT" Trademark (U.S. Reg. No. 1796645). The public record for this mark only lists its registrant, Varsity Spirit Corporation (a separate legal entity), as owner.

- 11 -

allegations must be enough to raise the right to relief above the speculative level[.]"); *Cap. Parks, Inc. v. Se. Advert. & Sales Sys., Inc*., 30 F.3d 627, 629 (5th Cir. 1994) ("[A] wholly-owned subsidiary[] is a separate legal entity possessing its own separate assets and liabilities.").

Accordingly, the court dismisses for lack of standing the claims of Varsity Brands and Varsity Spirit Fashions under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(c) and for trademark infringement, unfair competition, and trademark dilution under Texas law because they have not plausibly pleaded that they own the trademarks in question.  The court also dismisses for lack of standing Varsity Spirit's claims to the extent it relies on ownership of the "VARSITY SPIRIT" Trademark, which it does not appear to own.

III

Varsity Tutors moves under Rule 12(b)(6) to dismiss Varsity's breach of contract claim.[11]

---

[11]The court will address Varsity's breach of contract claim before considering its federal and state trademark-related claims because Varsity asserts that Varsity Tutors is violating trademark law only insofar as it is committing *unauthorized* uses of the trademarks, as defined under the Settlement Agreement.  The Settlement Agreement requires Varsity to release Varsity Tutors from any claims that Varsity has "concerning or in any way related to the Varsity Marks" for authorized uses.  ECF No. 29 at 43, ¶ 10.  Accordingly, the court will first determine whether Varsity's breach of contract claim states a claim on which relief can be granted, which is a prerequisite for Varsity to sue for unauthorized uses of its trademarks.  *See Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 367 (5th Cir. 2004) ("With regard to unauthorized uses, the contract by its terms cannot be set up as a defense, and thus a trademark action is allowed.") (applying Louisiana law).

A

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of Varsity's first amended complaint by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted).  To survive defendant's motion to dismiss, Varsity must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise the right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a) (2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

B

1

Varsity Tutors contends that Varsity's breach of contract claim fails as a matter of law because Varsity has not pleaded "performance or tendered performance," as required under

Texas law.  Varsity Tutors maintains that Varsity's allegation that it "performed all obligations of and conditions precedent to the Agreement" is conclusory and insufficient as a matter of law, and that Varsity has failed to plead performance by *each* plaintiff.

Varsity responds that it has sufficiently pleaded performance because it alleges compliance with the Settlement Agreement and also specifies one example of compliance: its sending of notices of breach to Varsity Tutors, as required under the Settlement Agreement.  Varsity maintains that it has adequately pleaded performance by each plaintiff because it alleges that its breach of contract notices were sent on behalf of Varsity Spirit and its related companies.

2

"Under Texas law, the elements of a breach of contract claim are: '1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach.'"  *Lee v. Tyco Elecs. Power Sys., Inc*., 393 F.Supp.2d 429, 434 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir. 2003)) (internal quotation marks omitted).  "In Texas, performance or tendered performance by the plaintiff is an essential element of a breach of contract claim." *Golden v. Wells Fargo Bank, N.A.*, 557 Fed. Appx. 323, 327 (5th Cir. 2014) (per curiam) (citing *Mullins v. TestAm., Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)).  "'[A] party to a contract who is himself in default cannot maintain a suit for its breach.'" *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (citation omitted).  A party fails to plead performance when it does not plausibly plead its satisfaction of the

- 14 -

requirements of the contract.  *See Metcalf v. Deutsche Bank Nat'l Tr. Co.*, 2012 WL 2399369, at *10 (N.D. Tex. June 26, 2012) (Fitzwater, C.J.).

3

Varsity alleges that it "has performed all obligations of and conditions precedent to the Agreement.  For instance, . . . Varsity sent notice to Defendant of its breaches, providing Defendant 30-days' notice to cure."  ECF No. 29 at 30, ¶ 77.[12]  Varsity Tutors relies on *Baron v. Baron*, 2018 WL 1156002 (N.D. Tex. Feb. 13, 2018), *rec. adopted*, 2018 WL 1157947 (N.D. Tex. Mar. 2, 2018) (Cummings, J.), *Cox v. PHH Mortg. Corp.*, 2014 WL 4060545 (N.D. Tex. Aug. 15, 2014) (O'Connor, J.), and *Scorza v. Delta Airlines, Inc.*, 2018 WL 3342891 (W.D. Tex. Jan. 10, 2018), to contend that Varsity's first amended complaint fails to plead performance or tender of performance.

*Scorza* is a decision of another district court and not binding on this court.

*Baron* and *Cox* are decisions of other judges of this court.  While not binding as the "law of the district," the undersigned "invariably gives serious and respectful consideration to the decisions of other judges of this court on questions of law—and typically follows them

_____

[12] In a reply brief footnote, Varsity Tutors suggests that Varsity has not pleaded more facts of performance because it cannot: that Varsity breached the Settlement Agreement by filing an opposition to Varsity Tutors' trademark application after the Settlement Agreement was signed and therefore failed to perform.  The court declines to consider this argument because it was first raised in Varsity Tutors' reply brief.  *See, e.g., Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief.") (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.)), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

because they are usually correct and because predictability in such matters is desirable." *SEC v. Cuban*, 798 F.Supp.2d 783, 788 (N.D. Tex. 2011) (Fitzwater, C.J.).  After giving such consideration to these decisions, the court concludes that both can be harmonized with the conclusion the court reaches in this case.  In *Baron* the plaintiff merely alleged that he "attempted to honor the [a]greement."  *Baron*, 2018 WL 1156002, at *5 (alteration in original).  And in *Cox* Judge O'Connor dismissed a plaintiff's claim because he only alleged that "Plaintiff tendered performance."  *Cox*, 2014 WL 4060545, at *7.

Varsity's allegation is similar to the one in *Siragusa v. Arnold*, 2014 WL 3512988, (N.D. Tex. July 16, 2014) (Lynn, J.), in which Judge Lynn denied a motion to dismiss a complaint that alleged that a plaintiff had "performed all tasks required of him under the agreement."  *Id.* at *3.[13]  In *Siragusa* the parties entered into a licencing agreement under which the plaintiff licensed the defendant to sell the plaintiff's product if the defendant met specified conditions.  *Id.* at *1.  The plaintiff could not allege much beyond asserting that he had complied with the terms of the contract by allowing use of a trademark or product.  The sole allegation of compliance with the agreement could therefore plausibly allege performance.  *See id.* at *3 ("The Court . . . finds that Plaintiff alleged his performance by granting SABG the right to market, distribute, and sell Sneaker Shields and retain 75% of the

_____

[13]It is also similar to *Tempur-Pedic International Inc. v. Angel Beds LLC*, 902 F.Supp.2d 958 (S.D. Tex. 2012), which, although not binding on this court, denied a motion to dismiss where the plaintiff's complaint alleged that "it ha[d] performed all actions required of it by the Settlement Agreement and all conditions precedent to Defendants' duty to perform have been performed."  *Id.* at 970.

proceeds."). Because *Siragusa* involved a similar contract to the one at issue here, the court deems its reasoning persuasive and opts to follow it.

The court will not require that Varsity plead its compliance with every requirement stated in terms of what it was *not* to do under the Settlement Agreement, as Varsity Tutors argues that it should.[14]  Indeed, there is "no authority for the proposition that Plaintiff's obligations must be further defined for [it] to plausibly allege performance." *Id.* at *3.  The court only requires "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Here, given the contractual obligations Varsity had, it has alleged sufficient facts to plausibly plead that it performed under the Settlement Agreement.

4

Varsity Tutors contends that Varsity's allegation that it sent breach-of-contract notices does not adequately plead performance because Varsity does not allege performance by each individual plaintiff.  Varsity Tutors argues that Varsity's one example of compliance with the Settlement Agreement in the first amended complaint—the sending of the breach-of-contract notices—was only done by Varsity Spirit LLC.  The court has held above, however, that the allegation in the first amended complaint that "Varsity [referring to all three plaintiffs] has performed all obligations of and conditions precedent to the Agreement" is

_____

[14]The Settlement Agreement requires, *inter alia*, that Varsity "not object to Varsity Tutor's use and/or registration of any "VT" mark," "release[] VT parties . . . from any and all claims," "not make any disparaging statements or representations . . . about the other Party," refrain from disclosing confidential information, and, if alleging breach, notify the other party of breach in writing and give them a 30-day cure period.  ECF No. 29 at 41-45, ¶¶ 6, 10, 13, 15.

alone sufficient to plead performance.  Accordingly, the court need not reach the question whether the breach-of-contract letters were sent by all parties or one, because Varsity has adequately pleaded performance for all three individual plaintiffs without relying on this allegation.

C

Varsity Tutors contends that Varsity's breach of contract claim fails as a matter of law because Varsity has not alleged facts showing that Varsity Tutors breached the Settlement Agreement.

1

"To prevail in a breach of contract claim, a plaintiff must show that the defendant failed to perform an act that it expressly or impliedly promised to perform."  *Berry v. Fed. Nat'l Mortg. Ass'n*, 2013 WL 1294008, at *4 (N.D. Tex. Mar. 29, 2013) (Lindsay, J.) (citing *Case Corp. v. Hi Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769-70 (Tex. App. 2005, pet. denied)).

Varsity's first amended complaint alleges that Varsity Tutors violated the Settlement Agreement four ways: (1) offering sports management and dance courses, in violation of ¶ 3(b); (2) owning domain names, in violation of ¶ 8(c); (3) filing applications to register the "VARSITY TUTORS" mark, in violation of ¶ 2; and (4) allowing its affiliate company, Veritas Prep LLC ("Veritas Prep"), to use is V-shaped logo, in violation of ¶ 2.  Varsity Tutors responds that (1) the Settlement Agreement does not mention dance or sports management, and equating dance with cheerleading is a "strained reading, at best"; (2) the

domain names use "varsity" in a non-trademark and *de minimis* manner, as permitted by ¶ 4 of the Settlement Agreement; (3) the applications filed to register "VARSITY TUTORS" were in the scope of the Settlement Agreement; and (4) Varsity Tutors is not liable for any intellectual property claims that Varsity may bring against Varsity Tutors' affiliate.

2

Varsity first contends that Varsity Tutors breached the Settlement Agreement by offering sports management and dance classes under its Varsity Tutors mark, in violation of ¶ 3(b) of the agreement, which prohibits use or registration of the Varsity Tutors mark in connection with "cheerleading camps, cheerleading clinics, and/or cheerleading competitions." ECF No. 29 at 29, ¶ 74.[15] Varsity posits that "cheerleading and dance are integrally related" so that Varsity Tutors' offering dance and sports management classes violates the Settlement Agreement's prohibition of "cheerleading"-related activities. Varsity Tutors maintains that these terms are not included in the Settlement Agreement and can only be found in the agreement under a "strained reading, at best." D. Mot. to Dis. at 18.

"The interpretation of a contract—including whether the contract is ambiguous—is a question of law." *McLane Foodservice, Inc. v. Table Rock Rests.*, *L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). A court's primary

---

[15]Varsity contends that the Settlement Agreement contains a drafting error and should prohibit the "use" of the "VARSITY TUTORS" mark in connection with "cheerleading camps; cheerleading clinics, and/or cheerleading competitions," even though the contract as read only prohibits "seek[ing] to register, or register[ing]." ECF No. 29 at 18, n.1. In deciding Varsity Tutors' motions, the court assumes that Varsity is correct because Varsity Tutors does not appear to dispute this premise.

concern in interpreting a contract under Texas law is to ascertain the parties' intent. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Disagreement by the parties over the meaning of an unambiguous contract does not turn an otherwise unambiguous contract into one that is ambiguous. *McLane Foodservice, Inc.*, 736 F.3d at 378 ("Ambiguity does not arise because of a 'simple lack of clarity,' or because the parties proffer different interpretations of the contract.").

Varsity alleges that Varsity Tutors offers sports management classes that "relate to multiple facets of organizing and running cheerleading competitions." ECF No. 29 at 18, ¶ 44. The court holds that this statement plausibly alleges conduct that is within the prohibited uses of the Settlement Agreement, which prohibits use of the "VARSITY TUTORS" mark "in connection with goods and services relating to . . . cheerleading competitions." ECF No. 29 at 40, ¶ 3(b). Therefore, Varsity has adequately pleaded a breach of contract claim as it relates to Varsity Tutors' sports management classes.

Varsity's argument that Varsity Tutors' dance classes are prohibited under this provision, however, is not plausibly pleaded. This allegation fails for the same reason that the previous one succeeds. Unlike Varsity's allegation regarding sports management classes, Varsity does not plead that the dance classes "relate to multiple facets of organizing and running cheerleading competitions." ECF No. 29 at 18, ¶ 44. Varsity only argues that the dance classes must violate the Settlement Agreement because "cheerleading and dance are integrally related." Ps. Br. at 13.

Even if the court assumes *arguendo* that Varsity is correctly arguing that

- 20 -

"cheerleading and dance are integrally related," Ps. Br. at 13, such that all cheerleading *must* include dance aspects and is therefore a type of dance, the reverse (i.e., that all dance activities include cheerleading) may not be (indeed, probably is not) true. Accordingly, even accepting the pertinent allegations of Varsity's first amended complaint as true, Varsity has not pleaded facts that are sufficient for the court to draw the reasonable inference that Varsity Tutors' classes violate the Settlement Agreement. A screenshot attached to the first amended complaint contains a description of Varsity Tutors' dance classes, which appear to include "hip-hop" and "ballet," but it does not describe any dance classes related to cheerleading dance. The court concludes that, although "dance" (as used in the pleading to describe Varsity Tutors' dance classes) may include "cheerleading" (as it appears in the Settlement Agreement), Varsity's first amended complaint does not allege facts that enable the court to draw the reasonable conclusion that the dance classes offered by Varsity Tutors provide a service in connection with "cheerleading camps, cheerleading clinics, and/or cheerleading competitions," as prohibited under the Settlement Agreement.

3

Varsity's second contention is that Varsity Tutors breached the Settlement Agreement by violating an express warranty that it did not own domain names that would violate the agreement. Varsity posits that Varsity Tutors' ownership of varsitytudors.com, varsitytutoring.com, varsitytutor.org, varsitytutor.info, varsityadmissions.com, varsitytestalpha.com, and varsitytutor.net violates ¶¶ 2, 3, and 8 of the Settlement Agreement. These provisions prohibit, *inter alia*, using the word "varsity" alone as a

trademark or using "any term or any other mark confusingly similar to the VARSITY Marks . . . [in a] domain name[.]"  ECF No. 29 at 39,  ¶ 2.[16]  Varsity Tutors responds that the use of the domain names is in compliance with the Settlement Agreement; Varsity Tutors points to a safe-harbor provision in ¶ 4 of the agreement that allows Varsity Tutors to use the word "varsity" in a "non-trademark manner" that is "de minimis."  D. Mot. to Dis. 18.

The court holds that Varsity Tutors' use of varsitytutor.org, varsitytutor.info, and varsitytutor.net violates the Settlement Agreement insofar as Varsity Tutors is using the "Varsity Tutors" trademark in the domain name in connection with "cheerleading camps, cheerleading clinics, and/or cheerleading competitions."  In other words, because these domain names use the words "varsity tutor" and redirect traffic to Varsity Tutors' main website where it offers these sports management services, the court holds that Varsity has plausibly pleaded that these domain names are using "Varsity Tutors" in connection with "cheerleading camps, cheerleading clinics, and/or cheerleading competitions."

---

[16]Varsity Tutors asks the court to take judicial notice that Varsity Tutors is not the owner of the varsitytestalpha.com domain name.  Varsity Tutors also requests that the court take judicial notice that varsityadmissions.com and varsitytutor.net are dormant websites (i.e., they do not contain any content).

The court declines to take judicial notice of Varsity Tutors' lack of ownership of varsitytestalpha.com because Varsity disputes this, and "it is not appropriate to take judicial notice of contested facts."  *United States v. Beaulieu*, 369 F.Supp.3d 655, 669 (E.D. La. 2019) (collecting Fifth Circuit cases).  The court also declines to take judicial notice that varsityadmissions.com and varsitytutor.net are dormant.  Varsity alleges that these websites directed consumers to Varsity Tutors' website *at the time of the Settlement Agreement*. Taking judicial notice that these websites are dormant *today* would not affect the plausibility of Varsity's allegation regarding Varsity Tutors' conduct at the time of the Settlement Agreement.

As for the remaining domain names composed of "varsity" together with another word, the most relevant prohibition in the Settlement Agreement that these domain names potentially violate is of the use the word "varsity" in a "confusingly similar" way to the "VARSITY marks."  The Settlement Agreement does not define what a "confusingly similar" use of the "VARSITY marks" would be.  But the agreement does offer a safe harbor: it allows Varsity Tutors to use the word "varsity" descriptively, or in an "otherwise non-trademark manner provided that such use is de minimis and merely incidental and not in reference to any goods or services enumerated . . . above."  ECF No. 29 at 40, ¶ 4.

Varsity directs the court to federal trademark infringement law to determine what constitutes "confusingly similar."  Varsity cites three cases where courts found domain names to be infringing under the Lanham Act because the marks had a "likelihood of confusion": *March Madness Athletic Ass'n v. Netfire, Inc*., 310 F.Supp.2d 786 (N.D. Tex. 2003) (Buchmeyer, J.), *aff'd*, 120 Fed. Appx. 540 (5th Cir. 2005); *Multisorb Technologies, Inc. v. Impak Corp.*, 2006 WL 1073036 (W.D.N.Y. Apr. 24, 2006); and *Financial Express LLC v. Nowcom Corp*., 564 F.Supp.2d 1160 (C.D. Cal. 2008).  In *Netfire* the court held that fans of the NCAA would have a "strong likelihood of confusion" that "marchmadness.com" was associated with the NCAA's March madness and the defendant's use of the domain name therefore infringed the plaintiff's trademark.  *Netfire, Inc.*, 120 Fed. Appx. at 812.  In *Multisorb Technologies* the defendant-competitor registered and used "www.multisorbtechnologies.com," which the court found to be nearly identical to the plaintiff's mark and therefore likely to cause confusion for consumers of the plaintiff.

*Multisorb Techs.*, 2006 WL 1073036, at *3.

And last, in *Financial Express* the plaintiff had a website registered in its own name "financeexpress.com," but it did not own the domain name for its product called "Tracker DMS." *Fin. Exp. LLC*., 564 F.Supp.2d at 1165-66. At the same time, the defendant-competitor had registered domain names that redirected users to its main site. *Id.* at 1166-67. These domain names included "trackerdmsonline.com," "trackerconversions.com," "trackerupgrade.com," "trackerdmsonline.com," and "financeexpressdms.com." *Id.* The court concluded that both the exactly similar names "trackerdmsonline.com" and "financeexpressdms.com" and the less similar names "trackerupgrade.com" and "trackerconversions.com" would likely cause confusion for consumers. *Id.* at 1174.

But to whatever extent these cases are instructive, they appear to apply trademark infringement definitions of "likelihood of confusion" that are more comprehensive than definitions found elsewhere in trademark law, such as the "confusingly similar" definition under the Anticybersquatting Consumer Protection Act ("ACPA"). *See S. Co. v. Dauben Inc*., 324 Fed. Appx. 309, 318 (5th Cir. 2009) (per curiam). In fact, the language used in the Settlement Agreement appears to be very similar to that applied by courts in ACPA cases. *See, e.g., E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 274-75 (5th Cir. 2002) (discussing the "confusingly similar" standard and "fair use" safe-harbor defense in context of the ACPA).

Under the ACPA, a domain name that does not reference the plaintiff's mark is not "confusingly similar." *GoForIt Ent., LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 725

(N.D. Tex. 2010) (Fitzwater, C.J.).   In *GoForIt* this court held that the domain name "recipes.com" did not use plaintiff's GOFORIT trademark and therefore was not "confusingly similar." *Id.*  Similarly, courts have held that referring to a mark in a way that would not confuse consumers is not "confusingly similar."  *Ford Motor Co. v. Greatdomains.Com, Inc.*, 177 F.Supp.2d 635, 642 n.3 (E.D. Mich. 2001) ("No reasonable person could conclude that [fordstheater.org] was 'used or approved' by the Ford Motor Company.").  But slight variations of a mark or additions of the mark along with other words in the domain name have been found to be confusingly similar when they raise the possibility that one would associate the domain name with the mark.  *See U.S. Fallen Heroes Found. v. Am. Fallen Warrior Mem'l Found.*, 2011 WL 13234904, at *5 (N.D. Tex. Oct. 19, 2011) (Solis, J.) (citing *Ford Motor Co.*, 177 F.Supp.2d at 641) (holding that "marks incorporated into the domain names '4fordparts.com,' 'jaguarcenter.com,' and 'volvoguy.com' were found to be confusingly similar to the marks FORD, JAGUAR, and VOLVO").  The key in these cases appears to be whether a consumer would accidentally assume that the mark in the domain name is associated with the wrong company.

Varsity has failed to plead sufficient facts to enable the court to draw the reasonable inference that varsitytudors.com, varsitytutoring.com, and varsitytestalpha.com are confusingly similar to Varsity's marks.  These domain names are more similar to the "VARSITY TUTORS" mark (which is permitted under the Settlement Agreement) and likely would not confuse a potential consumer of Varsity because the "test alpha" or "tudors" language does not appear to reference any service or other offering by Varsity that a

consumer would accidentally associate with it (as the "4fordparts.com," "jaguarcenter.com," and "volvoguy.com" examples above may reference services or offerings by those companies). While Varsity has pleaded that some consumers have been confused, Varsity has not alleged why there is confusion, and the court does not find it plausible that the confusion is due to consumers' searching for Varsity using a "varsity tutors" domain name.

On the other hand, whether the domain name varsityadmissions.com is confusingly similar presents a closer question. It may be confusingly similar because it lacks the "tutors" word, and consumers might associate the mark with Varsity if they accidentally search for admission to Varsity's camps and land on Varsity Tutors' page. Varsity offers many competitions, so a consumer may be apt to search for Varsity "admissions" to these competitions. There is some support in the first amended complaint for this: Varsity alleges that the Varsity Tutors' and Varsity's trademarks have caused confusion with consumers. And a consumer may be confused especially because the logos of the companies and color schemes are similar. Accordingly, the court holds that Varsity has plausibly pleaded sufficient facts to show breach of contract as to Varsity Tutors' use of varsityadmissions.com because the court is able to draw the reasonable inference that consumers may search for varsityadmissions.com expecting to land on Varsity's page, but arrive on Varsity Tutors' page.

4

Varsity posits, third, that Varsity Tutors breached ¶¶ 2, 3, and 8 of the Settlement Agreement by filing applications (both abroad and in the United States) to register the

"VARSITY TUTORS" mark.  Varsity's first amended complaint alleges that the goods and services offered under these marks were for a "'wide variety of subject matter and topics of general interest' . . . which . . . are likewise prohibited by the Agreement."  ECF No. 29 at 17, ¶ 41.  Varsity Tutors contends that its trademark was registered in these applications only in connection with those goods and services permitted by the Settlement Agreement.  In its response brief, Varsity does not respond to this argument as to the pending trademark applications at the USPTO and in foreign countries, but it does appear to challenge indirectly Varsity Tutors' contention by maintaining that its services offered (generally, not just in relation to the pending applications) violate the Settlement Agreement.

The court concludes that Varsity has not adequately pleaded a violation of ¶ 8.  Varsity only alleges that these pending applications were for use of the trademark for a "'wide variety of subject matter and topics of general interest' . . . which . . . are likewise prohibited by the Agreement."  ECF No. 29 at 17, ¶ 41 (quoting Varsity Tutors' application description).  And although the court has held in favor of Varsity above, concluding that Varsity Tutors violated the Settlement Agreement by using its mark in connection to sports management classes that taught cheerleading competition management, *see supra* § III(C)(2), Varsity has not pleaded *when* Varsity Tutors began these classes.  Because the provision in the Settlement Agreement that Varsity challenges (i.e., that Varsity Tutors breached the warranties at the time of drafting), it is necessary to know when these classes began.  Varsity's general allegation that these trademarks used Varsity Tutors' mark in regard to classes of general interest does not state sufficient facts for the court to draw the reasonable

inference that Varsity Tutors breached the agreement if the sports management classes did not begin until *after* the agreement was signed. Accordingly, the court concludes that Varsity has not plausibly pleaded a violation as to the pending trademark applications under ¶ 8 of the Settlement Agreement.

The court also holds that Varsity has not pleaded a violation of ¶¶ 2 and 3. The court ruled in favor of Varsity above because Varsity Tutors offered sports management classes, in violation of the agreement. But here, Varsity has not alleged that *these* new, pending trademark applications used the new mark in connection with these sports management classes. Varsity merely avers that these pending applications were for a "'wide variety of subject matter and topics of general interest' . . . which . . . are likewise prohibited by the Agreement." ECF No. 29 at 17, ¶ 41 (quoting Varsity Tutors' application description). Under the Settlement Agreement, Varsity Tutors may use the "VARSITY TUTORS" mark, but not in connection with cheerleading-related activities. As such, if these new pending applications do not use the mark with the sports management or dance classes, Varsity likely cannot show that they violate the Settlement Agreement. The court holds that Varsity has not adequately pleaded a violation as to the pending trademark applications under ¶ 2 or 3 of the Settlement Agreement.

5

Varsity contends, fourth, that Varsity Tutors breached the Settlement Agreement by allowing its affiliate company, Veritas Prep, to use a V-shaped logo, in violation of ¶ 2. Varsity posits that Veritas Prep's use of a "V" logo violates the Settlement Agreement and

that Varsity Tutors can be held liable for Veritas Prep's infringement because parent companies can be held liable for an infringing subsidiary. Varsity Tutors maintains that Varsity has not sufficiently pleaded facts to hold Varsity Tutors liable for the actions of Veritas Prep.

Varsity cites one case, *Garcia v. Global Development Strategies, Inc*., 2014 WL 1805374 (W.D. Tex. May 7, 2014), to support its claim. The court in *Garcia* stated that "[t]rademark infringement liability can extend to parent companies or licensors who permit a subsidiary or licensee to violate another's trademark." *Id.* at *5. But this statement comes in the middle of a discussion of personal jurisdiction. *See id.* The *Garcia* court also cites a Supreme Court case that addresses a company's liability for distributors down the supply chain, not the liability of a parent company for a subsidiary. *See Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc*., 456 U.S. 844, 853-54 (1982).

"A bedrock principle of corporate law is that 'a parent corporation ... is not liable' for actions taken by its subsidiaries." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). "The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003). The corporate veil may be pierced and a holding corporation be held liable for the subsidiary's conduct when "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the [parent corporation's] behalf." *Bestfoods*, 524 U.S. at 62. The party seeking to pierce the corporate veil bears the

burden of showing that the court should hold the parent liable for the actions of the subsidiary. *Subway Equip. Leasing Corp. v. Sims*, 994 F.2d 210, 217 (5th Cir. 1993). In the absence of fraud allegations, a parent corporation may be liable for a subsidiary's acts pursuant to the alter ego doctrine. *United States v. Jon-T Chems., Inc*., 768 F.2d 686, 691 (5th Cir. 1985). To prove that a subsidiary is an alter ego of a parent corporation, the party asserting the alter ego theory must show that "(1) the [parent corporation] exercised complete control over the [subsidiary] with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Bridas S.A.P.I.C*., 447 F.3d at 416.

Varsity's first amended complaint only alleges that Veritas Prep is a "Varsity Tutors affiliated company." Varsity's response brief seeks to bolster this allegation by attaching press releases announcing Varsity Tutors' acquisition of Veritas Prep in 2019. But "[t]he court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "In determining whether [Varsity] has met the plausibility standard, the court will not consider the contents of [its] response brief that exceed what is actually pleaded in [Varsity's first amended] complaint." *Vazzano v. Receivable Mgmt. Servs., LLC*, 2021 WL 3742618, at *3 (N.D. Tex. Aug. 24, 2021) (Fitzwater, J.) (citing cases). Because the documents attached to Varsity's response brief do not fall within the scope of those that the court is permitted to consider, the court will not

take them into account.  The court holds that Varsity's single allegation that Veritas Prep is

a "Varsity Tutors affiliated company" is insufficient as a matter of law to hold the parent

company, Varsity Tutors, liable for Veritas Prep's actions.  *See Coach, Inc. v. Asia Pac.*

*Trading Co.*, 676 F.Supp.2d 914, 926 (C.D. Cal. 2009) ("Plaintiffs cite no authority—and

the Court is unaware of any—to support their contention that such evidence, by itself, tends

to establish that two companies who otherwise maintain separate corporate identities

nevertheless share a single identity for purposes of imposing liability for trademark rights

violations.").

IV

The court turns next to Varsity Tutors'[17] motion to dismiss Varsity's claims for

trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) and Texas

common law, false designation of origin, unfair competition, and passing off under the

Lanham Act, 15 U.S.C. § 1125(a), unfair competition under Texas common law, and

trademark dilution under the Lanham Act, 15 U.S.C. §1125(c) and Tex. Bus. & Com. Code

Ann. § 16.103(b).[18]

---

[17]The court continues to refer to the plaintiffs, collectively, as "Varsity" in this section. But as discussed above, only Varsity Spirit may assert the claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1), and Texas common law, unfair competition under Texas law, and trademark dilution under the Lanham Act, 15 U.S.C. §1125(c), and Tex. Bus. & Com. Code Ann. § 16.103(b), because it is the owner of the trademarks in question and therefore does not lack standing. *See supra* § II(C).  All plaintiffs may assert claims based on § 1125(a).

[18]The parties address these claims together, and Varsity Tutors challenges them insofar as they all require lack of consent and use in commerce.  The parties appear to agree

A

Varsity Tutors contends that Varsity's federal and state trademark-related claims should be dismissed because Varsity has not adequately alleged "use in commerce," as required by statute;[19] that Varsity Tutors' actions were authorized by the Settlement Agreement, so Varsity consented to the conduct; and that Varsity's dilution claims fail because it has not pleaded that its mark is famous.

Varsity responds that it has sufficiently pleaded "use in commerce" throughout and that it has also pleaded unauthorized use outside the boundaries of the Settlement Agreement. Varsity also posits that the first amended complaint contains enough information to allege that its mark is famous.

B

A party seeking to assert trademark-related claims under federal and state law generally must show that the infringing conduct was unauthorized. *ICEE Distributors*, 325 F.3d at 597 ("The purpose of [federal trademark dilution claims] is to protect trademarks from *unauthorized* users who attempt to trade upon the goodwill and established renown of

_____

that these claims require that Varsity show both lack of consent and use in commerce. The court therefore addresses these claims together.

[19]Throughout the following sections, the court frames the analysis in terms of federal law because the parties do not distinguish between the state and federal claims. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) ("In any event, the arguments on appeal are framed solely in terms of federal law, and we address them accordingly."). In any event, the federal claims and their Texas law corollaries are essentially no different. *See id.*

such marks.") (emphasis added) (citations and internal quotation marks omitted); *Bos. Pizza Rests., L.P. v. Bay Three Ltd., Inc*., 2013 WL 12123895, at *3 (N.D. Tex. July 8, 2013) (O'Connor, J.) ("[L]iability [for claims under §§ 1114(1) and 1125(a)] is predicated on the *unauthorized use* of the trademark or confusingly similar marks.") (emphasis in original); *7-Eleven Inc. v. P.R.-7 Inc.*, 2009 WL 4723199, at *5 (N.D. Tex. Dec. 9, 2009) (Boyle, J.) ("Whether Defendants' alleged use of the [plaintiff's] Marks constitutes [federal and state] infringement or unfair competition turns on whether [plaintiff] validly terminated the [agreement] that had previously authorized [defendant] to use those marks.").[20]

The parties' dispute over consent under trademark law is identical to the one over breach of contract, which the court had addressed above.  If conduct is within the scope of the Settlement Agreement it is consented to and therefore cannot be the basis for Varsity's trademark-related claims.  *See Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 367 (5th Cir. 2004) ("[The settlement agreement allows defendant] to make certain uses of his name in connection with his restaurants, [so plaintiff] can prevail on its trademark claim only to the extent it shows that incremental confusion . . . [from] unpermitted uses . . . . [Plaintiff] cannot be heard to charge [defendant] with being an infringer with regard to any confusion that results from uses to which it acceded in the yet-extant contract."); *TGI Friday's, Inc.*, 652 F.Supp.2d at 768 (N.D. Tex. 2009) (Fitzwater, C.J.) (permitting suit when "[plaintiff] terminated the franchise agreements" and "defendants' continued use of its marks is

---

[20]The parties agree that only *unauthorized* uses of the trademark violate trademark law.

unauthorized."); *see also Omega S.A. v. Omega Eng'g, Inc.*, 396 F.Supp.2d 166, 175-76 (D. Conn. 2005) (holding that 15 U.S.C. §§ 1114(1) and 1125(a) trademark and false designation of origin claims were precluded where based on consent in settlement agreement), *opinion adhered to on reconsideration*, 2005 WL 3307277 (D. Conn. Dec. 6, 2005).  The court has determined above the conduct of Varsity Tutors that violated the Settlement Agreement and that which did not.  The conduct within the scope of the agreement is conduct to which Varsity consented and therefore barred as a matter of law as it applies to Varsity's trademark-related claims.

## C

A party seeking to assert trademark-related claims under the Lanham Act and state law must generally show the mark was "used in commerce."  15 U.S.C. § 1114(1); *Id.* §§ 1125(a), (c).  "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade[.]"  15 U.S.C. § 1127.  A mark is used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." *Id.*

Varsity Tutors only disputes whether the mark was "used in commerce" in connection with the domain names.[21]  It first posits that an allegation of registration of a domain name

---

[21]The court does not address whether the filing of the pending applications violates trademark law because Varsity maintains that it is only alleging breach of contract based on this conduct, not infringement under trademark law.  Although Varsity Tutors argues otherwise—contending that Varsity's first amended complaint does assert a violation of trademark law based on this conduct—Varsity does not address this claim.

The court also does not address the sports management classes here.  Varsity Tutors

is insufficient in itself to plausibly plead "use in commerce," and that Varsity's conclusory assertion that the domain names were used in commerce is insufficient without additional facts. Alternatively, Varsity Tutors maintains that the domain names were not "used" in a trademark-like manner such that they were a "use" of a mark under the Lanham act. Varsity responds that the first amended complaint alleges supporting facts for the assertion that the domain names were diverting users to Varsity Tutors' main website, where it sells its services, thereby constituting "use in commerce."

The court will assume *arguendo* that Varsity Tutors is correct that mere registration of a website address is alone insufficient to satisfy the requirement of "use in commerce." But this has no effect on Varsity's first amended complaint. Varsity appears to allege that the use of the domain names to redirect users to varsitytutors.com is the infringement, not merely ownership of the domain name itself. Accordingly, the court need not address the cases Varsity Tutors cites because they support only the premise that mere ownership of a domain name is insufficient. *See Juno Online Servs. v. Juno Lighting, Inc*., 979 F. Supp. 684,

---

does not appear to dispute whether the trademark used with the sports management classes was used in commerce. At one point, Varsity Tutors alleges that all of Varsity's trademark claims—including concerning the sports management classes—fail to adequately allege "use in commerce." But Varsity Tutors does not discuss the point further and continues to dispute only the "use in commerce" of the pending trade applications and domain names. Even if the court were to conclude that Varsity Tutors has disputed this, the court would hold that Varsity adequately alleges use in commerce regarding the use of the mark. The first amended complaint alleges that Varsity Tutors offered the sports management classes, and a screenshot attached to the first amended complaint shows these classes being advertised under the "VARSITY TUTORS" mark on Varsity Tutors' website. This satisfies the statute as a "bona fide use of a mark in the ordinary course of trade[.]" 15 U.S.C. § 1127.

691 (N.D. Ill. 1997) (describing complaint that stated that "[Defendant's] web page is 'non-existent,' . . . and admits that [defendant] did not use the domain name 'juno-online.com' 'in connection with its own business'").

Varsity alleges that the domain names are used to redirect users to varsitytutors.com, where Varsity Tutors sells its products to consumers.  Courts have held that using a domain name to redirect consumers to one's main website is a "use in commerce." *Soter Techs., LLC v. IP Video Corp.*, ___ F.Supp.3d ___, 2021 WL 744511, at *5 (S.D.N.Y. Feb. 26, 2021)*; ZP No. 314, LLC v. ILM Cap., LLC*, 335 F.Supp.3d 1242, 1267 (S.D. Ala. 2018); *Sterling Auto. Grp. Inc. v. Ramayo*, 2020 WL 7495302, at *2, 5 (W.D. La. Dec. 18, 2020); *NextEngine Ventures, LLC v. Lastar, Inc.*, 2014 WL 12581777, at *4 (C.D. Cal. June 3, 2014); *S. Grouts & Mortars, Inc. v. 3M Co.*, 2008 WL 11333151, at *3 (S.D. Fla. Apr. 29, 2008) ("The allegations in the present case of forwarding/redirecting and accumulation and utilization of website data as forms of commercial use are a significant step away from warehousing, and a far cry from a concession of non-use.").  The court agrees with these courts that such conduct qualifies as "use in commerce."  It therefore holds that Varsity has alleged sufficient facts to enable the court to draw the reasonable inference that the redirection via domain names to Varsity Tutors' commercial website is "use in commerce" of those domain names under the Lanham Act.

Varsity Tutors contends that, even if using the domain names for redirection is "in commerce," the domain names are not "used" in a trademark-like manner.  In other words, Varsity Tutors disputes the "use" component of the "use in commerce" requirement.  *See*

*Soter Techs., LLC*, 2021 WL 744511, at *4 (holding that "'use' must be decided as a threshold matter because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark.") (citations and internal quotation marks omitted).  Varsity Tutors points to cases that it maintains support the principle that a domain name *per se* is not "use" in a trademark-like manner; a domain name is merely a web address and therefore cannot violate the Lanham Act as a "use" of a mark.  *See 1–800 Contacts, Inc. v. WhenU.Com, Inc*., 414 F.3d 400, 408-09 (2d Cir. 2005) (finding use of web address containing trademark not to be infringing use because the addition of "www." and ".com" to a trademarked word transformed it into web address that functioned as a "public key"); *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F.Supp.2d 734, 757 (E.D. Mich. 2003) ("There can be no liability under the Lanham Act absent the use of a trademark *in a way that identifies the products and services being advertised by the defendant*.") (emphasis added).

But as the cases that Varsity Tutors cites recognize, however, "a domain name does not become a trademark or service mark unless *it is also used to identify and distinguish the source of goods or services*."  5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 25A:18 (5th ed.) (emphasis added) (hereinafter McCarthy on Trademarks); *see also Mashantucket Pequot Tribe v. Redican*, 403 F.Supp.2d 184, 191 (D. Conn. 2005) ("A court ordinarily finds 'use' when a defendant 'place[s] the plaintiff's trademark on any goods or services in order to pass them off as emanating from or authorized by [the plaintiff].'") (alterations in original) (quoting *1–800 Contacts*, 414 F.3d at 408).

This court's opinion in *GoForIt* is instructive.  In *GoForIt* the plaintiff owned a trademark, GOFORIT, and a domain name, GoForIt.com.  *GoForIt*, 750 F.Supp.2d at 718.  The plaintiff alleged that the defendant's ownership of domain names such as GoForIt.com.org or GoForIt.com.net, which redirected users to the defendant's site, violated the Lanham Act.  *See id.* at 717-18.  The court held that, even if the registered domain names included "a combination of letters," such as "goforit," that was similar to the plaintiff's trademark, this did not constitute a "use" because "[the defendant] does not handle the third-party user's trademark input *as a trademark*, but merely as a web address that internally redirects to the domain name's homepage."  *Id.* at 728 (emphasis in original).  A domain name is not a "use" of a trademark unless the domain name is used "in a source-identifying way to pass off their services" as another's.  *Id.* at 728-29 ("It would be different if defendants had configured their website to display 'GoForIt.com' on the user's address bar after redirecting users to the "com.org" site and displayed other indications of affiliation with GEL and its GOFORIT mark.").  A domain name therefore may be a "use" under some circumstances.  *See Soter Techs., LLC*, 2021 WL 744511, at *5 ("[D]istrict courts in this Circuit and elsewhere have sustained trademark infringement and Lanham Act unfair competition claims where a defendant has used a competitor's name as its own domain name, including where the domain name itself is not registered as a trademark.").[22]

---

[22]The cases Varsity cites only indirectly support this proposition; these cases analyzed the "liklihood of confusion" elements to determine whether the domain names would cause confusion among consumers, not whether a domain name can categorically qualify as a "use."  In *Multisorb Technologies* the defendant registered the domain name

In *Soter Technologies* the defendant registered a domain name that was nearly identical to the plaintiff's trademarked name, hoping that consumers "typ[e] www.flysense.com into the address bar of a web browser [thinking] they would be accessing a website purveying Flysense products." *Id.* at *7. The court held that this was a "use" under the Lanham Act. *Id.* at *9.

Varsity alleges that the similarity between "varsity" and "varsity tutor" has caused confusion among consumers who associate one brand with the other; that the websites have the same color scheme, including the color blue, which adds to the confusion; that Varsity and Varsity Tutors reach the same target audience (students), who might be confused between the two; and that Varsity offers services that are somewhat similar to those of Varsity Tutors.

As to the domain names varsitytutor.org, varsitytutor.info, and varsitytutor.net, the court holds that Varsity has not alleged sufficient facts to state a plausible claim. In *Soter*

---

"www.multisorbtechnologies.com," which redirected users from that domain to the defendant-competitor's main website, www.sorbentsystems.com. *Multisorb Techs.*, 2006 WL 1073036, at *1. The *Multisorb Technologies* court held that the competitor's redirection was likely to confuse consumers to think the website was associated with the plaintiff. *Id.* at *3. Similarly, in *Finance Express*, discussed above, the plaintiff had a website registered in its own name, "financeexpress.com," but did not own the domain name for a product that it owned called "Tracker DMS." *Fin. Exp. LLC.*, 564 F.Supp.2d at 1165-66. A competitor registered domain names that redirected users to its main site. *Id.* at 1166-67. These domain names included "trackerdmsonline.com," "trackerconversions.com," "trackerupgrade.com," "trackerdmsonline.com," and "financeexpressdms.com." *Id.* The court concluded that both the exactly similar names "trackerdmsonline.com" and "financeexpressdms.com" and the less similar names "trackerupgrade.com" and "trackerconversions.com" violated federal trademark law because they might confuse consumers. *Id.* at 1174.

*Technologies* the domain name was identical to the rival company, thereby raising the potential that the domain name was being used to "pass off" products as the accused's own. Here, the domain names simply contain Varsity Tutors' own trademarked name, and Varsity has not adequately pleaded how a consumer could be fooled by using these domain names and expecting to land on Varsity's page. Varsity has failed to plead sufficient facts to enable the court to draw the reasonable inference that these domain names are used in such a way that Varsity Tutors is "passing off" its services by confusing consumers regarding these domain names.

Although the domain name varsityadmissions.com, as discussed above, presents a more difficult question, the court holds that Varsity has adequately pleaded facts supporting its trademark-related claims. The key difference between the previous domain names and this one is that varsityadmissions.com does not contain Varsity Tutors' own name, and a consumer is more likely to search varsityadmissions.com and expect to land on Varsity's page. Varsity offers many competitions, so a consumer may be likely to search for Varsity "admissions" to these competitions. The same is true for Varsity's "Varsity University" offerings. Some consumers seeking management training may also be confused when looking for admissions, especially given the similarity of the parties' marks as alleged by Varsity. At this stage, given Varsity's allegations, the court concludes that consumers may be confused and that the varsityadmissions.com address may be so confusing that it is used "in a source-identifying way" such that it qualifies as a "use" under the Lanham Act.

D

As for Varsity's claims under the Lanham Act, 15 U.S.C. §1125(c), and for trademark dilution under Tex. Bus. & Com. Code Ann. § 16.103(b), Varsity Tutors maintains that Varsity has not plausibly pleaded a dilution claim under federal or state law because it has not adequately pleaded that its mark is famous.  Varsity Tutors posits that Varsity has failed to allege that its mark has national fame, like "Budweiser" or "Nike," beyond a niche market.

Varsity responds that, because this case is at the pleading stage, it need only plausibly plead a "famous" mark, not prove that its mark is in fact as famous as other marks.  Varsity also maintains that it has alleged facts showing that the Varsity brand is well-known to the general consuming public, both nationally and in Texas.

Under both federal law and Texas law, dilution claims are only available to those who own "famous" marks.  *Shippitsa Ltd. v. Slack*, 2019 WL 3304890, at *10 (N.D. Tex. July 23, 2019) (Fitzwater, J.) (first citing 15 U.S.C. § 1125(c)(1); and then citing Tex. Bus. & Com. Code Ann. § 16.103(a) (West 2021)).  To determine whether a mark is famous under federal law, courts consider all relevant factors, including:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A).

- 41 -

Federal law "restrict[s] dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie dolls, and the like." *Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc*., 2018 WL 1806500, at *4 (N.D. Tex. Apr. 17, 2018) (Boyle, J.) (quoting *Bd. of Regents, Univ. of Tex. Sys. ex rel. Univ. of Tex. at Austin v. KST Elec., Ltd.*, 550 F.Supp.2d 657, 679 (W.D. Tex. 2008)).  "Other examples of famous marks include the JUST DO IT Nike slogan, the STARBUCKS mark, the MCDONALD'S mark, and the PEPSI mark." *Id.* (citing 4 McCarthy on Trademarks § 24:107).  The federal dilution statute is "simply not intended to protect trademarks whose fame is at all in doubt." *KST Elec., Ltd.*, 550 F.Supp.2d at 679 (quoting Barton Beebe, *A Defense of the New Federal Trademark Antidilution Law*, 16 Fordham Intell. Prop. Media & Ent. L.J. 1143, 1158 (2006)).  Because the statute requires that the plaintiff's mark be "recognized by the general consuming public of the United States," 15 U.S.C. § 1125(c)(2)(A), "fame only in a limited geographic area or niche market will not support a federal dilution claim." *Springboards*, 2018 WL 1806500, at *4.

To determine whether a mark is famous under Texas law, courts consider a similar set of factors that emphasize the reach of the mark in Texas:

> (1) the duration, extent, and geographic reach of the advertisement and publicity of the mark in this state, regardless of whether the mark is advertised or publicized by the owner or a third party;
> (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark in this state;
> (3) the extent of actual recognition of the mark in this state; and
> (4) whether the mark is registered in this state or in the United States Patent and Trademark Office.

Tex. Bus. & Com. Code Ann. § 16.103(b).  The Texas-law fame analysis is therefore similar to its federal-law counterpart, but with a different geographical focus.  *See, e.g., Springboards*, 2018 WL 1806500, at *6 ("[Plaintiff's] Texas dilution claim fails for the same reason its federal dilution claim fails .").  To succeed on this claim, Varsity must allege facts "showing that members of the general consuming public recognize its mark, either throughout the United States (for [Varsity's] federal-law claim) or throughout the state of Texas (for its state-law claim)."  *Shippitsa Ltd.*, 2019 WL 3304890, at *11.

Varsity alleges that Varsity is "a household name" and "widely recognized by the general consuming public" in Texas and nationwide, ECF No. 29 at 1, ¶ 2, and 15, ¶ 34; that Varsity hosts national tournaments that reach youth and young adult dancer and cheerleader participants of all ages; that these tournaments are nationally televised with "countless athletes and their families and fans exposed" to Varsity each year, *id*. at 9, ¶ 27; that Varsity hosts seven nationally televised events with twenty-eight hours of combined total airtime on major sports networks, reaching nearly seven million viewers; and that Varsity advertises nationally and promotes its mark across a variety of media.

The parties cite various cases that appear to be in tension, with some courts finding moderately well-known marks not to be famous and others holding that they are.  *KST Electric*, for example, held that the University of Texas' logo was not famous because it did not reach beyond a niche market.  *KST Elec., Ltd.*, 550 F.Supp.2d. at 677; *see also Springboards*, 2018 WL 1806500, at *4 (holding that allegations regarding brand recognition at education conventions and fairs as well as strong goodwill in education field only

supported "niche" fame).  But another case held that the Icon Health & Fitness logo may be famous.  *See Icon Health & Fitness, Inc. v. Kelley*, 2017 WL 6610085, at *3-4 (W.D. Tex. Dec. 27, 2017), *rec. adopted*, 2018 WL 1203465 (W.D. Tex. Jan. 11, 2018); *see also Valley Forge Mil. Acad. Found. v. Valley Forge Old Guard, Inc.*, 24 F.Supp.3d 451, 459 (E.D. Pa. 2014) (finding sufficient facts pleaded that mark was famous where "Plaintiffs claim the marks have been continuously used since 1928, have continuously been used to advertise and promote for Plaintiffs, have been used extensively by the press in connection with Plaintiffs, and are known throughout the nation and world as identifying Plaintiffs").

Varsity maintains that any tension among these cases can be resolved by focusing on their pleading posture: in many of the cases that Varsity Tutors cites, the court was ruling on a motion to dismiss when it held that the mark was not famous.  *Cf., e.g.*, *In-N-Out Burgers v. Smashburger IP Holder LLC*, 2017 WL 10402610, at *3 (C.D. Cal. Dec. 21, 2017) ("Smashburger also argues that any notoriety of the mark is limited to the six states where In-N-Out operates locations, and that the mark is famous only amongst 'aficionados of quick-service hamburgers.' These arguments take aim at the *truth* of In-N-Out's factual allegations and as such are more appropriate for summary judgment.") (emphasis in original) (citation omitted).

The court concludes that these cases do not turn on their procedural posture so much as a fact-intensive inquiry into what allegations were made and whether these facts state a plausible claim of fame for the mark.  *Compare Springboards*, 2018 WL 1806500, at *4 (holding at motion-to-dismiss stage that mark was not famous when facts alleged only

- 44 -

showed niche fame within educational field) *with In-N-Out Burgers*, 2017 WL 10402610, at *3 (holding that mark was famous at motion-to-dismiss stage because plaintiff alleged that its brand had reach beyond its geographical locations).

Considering the factual allegations of Varsity's first amended complaint, the court holds that Varsity has not plausibly alleged a famous mark; it has only discussed its national reach in the context of a niche group. For example, Varsity alleges that it televises nationally. But it avers that these televised tournaments reach "countless athletes and their families and fans"—not the general consuming public. ECF No. 29 at 9, ¶ 27. Varsity also asserts that it reaches youth and young adult dancer and cheerleader participants of all ages—again, not the general consuming public. Varsity also avers that it advertises nationally and promotes its mark across a variety of media, but there are no specific allegations as to where this advertising reaches. Finally, Varsity's assertion that it reaches 7 million viewers fails to state whether these are the same cheerleading fans, as it suggests elsewhere in its first amended complaint, or the general population. By contrast, in *In-—Out Burgers* the plaintiff-burger company alleged it reached beyond the burger community with its pop-up shops, which drew the attention of a variety of media, and its well-known burgers, which were known as being the best burger in the United States. *In-N-Out Burgers*, 2017 WL 10402610, at *3. The plaintiff alleged that it reached not just burger fans but "foodies" (food fans) in general. *Id.*

Varsity maintains that "it is improper to ignore the myriad other groups exposed to . . . Varsity's famous VARSITY mark, including spectators, the families and others

supporters of those competing, cheer/dance enthusiasts, educators, coaches, gym owners, and the wide range of businesses involved in cheer/dance competitions." Ps. Br. at 20. The court agrees. But identifying these groups only highlights Varsity's shortcoming: it only identifies exposure in a niche market.

Varsity cites a variety of cases where courts have found national exposure of the brand alone to be sufficient to state a plausible claim for relief. *See Valley Forge Mil. Acad. Found*, 24 F.Supp.3d at 459; *YETI Coolers, LLC v. JDS Indus., Inc*., 300 F.Supp.3d 899, 914-15 (W.D. Tex. 2018); *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, 2019 WL 3130231, at *5 (W.D. Tex. July 15, 2019). These cases, however, are distinguishable because the plaintiffs alleged that the public associated the trademark with the company and that the nation as a whole had been broadly exposed to the mark. *E.g. Valley Forge Mil. Acad. Found*, 24 F.Supp.3d at 459 (finding that plaintiffs alleged that they "are known throughout the nation and world as identifying Plaintiffs"); *YETI Coolers, LLC*, 300 F.Supp.3d at 915 (finding that plaintiff alleged that trademark "has become a famous well-known indicator of the origin and quality of YETI's products").

Although Varsity does allege national exposure and national recognition, it couches its allegations *within the cheerleading community*. For example, Varsity asserts that it is a "household name," but it specifies a particular group, "including for middle, high school, and college students"—in other words, its cheerleading students. ECF No. 29 at 1, ¶ 2. Varsity also asserts that its marks "have been used . . . [s]o that *consumers*"—not necessarily the general public—"have come to associate them with one source, namely Varsity." *Id.* at 5,

¶ 15 (emphasis added).  Indeed, in Varsity's discussion of its national exposure, it alleges that its advertising and events expose "countless athletes and their families and fans" (i.e. those in the cheerleading market) to the marks.  *Id.* at 9, ¶ 27.  And its allegations regarding other activities where it promotes its marks, such as with "Generation Spirit" to promote cheerleading inclusivity, appear also to be cheerleading-related.  Varsity's conclusory statement of appeal to the general consuming public is not supported by sufficient facts.

Accordingly, the court holds that Varsity has failed to plausibly plead that its mark is famous such that it reaches beyond just cheerleading or dance fans or families.  Varsity must allege facts showing that members of the general consuming public recognize its mark, either throughout the United States (for Varsity's federal-law claim) or throughout the state of Texas (for its state-law claim).  *Springboards*, 2018 WL 1806500, at *4-6.  Varsity has not done so.  It has not plausibly pleaded that its mark is on par, in any geographical area, with the likes of Starbucks, McDonald's, Rolex, or Apple. *See* 4 McCarthy on Trademarks § 24:107.

V

The court now turns to Varsity Tutors' alternative motion for a definite statement under Rule 12(e).

A

Varsity Tutors contends that Varsity's first amended complaint alleges multiple claims on behalf of multiple plaintiffs without distinguishing among the three of them.  Varsity Tutors posits that the first amended complaint does not provide adequate notice and prevents

Varsity Tutors from filing a proper responsive pleading and answer.  Varsity responds that any ambiguity can be cleared up during discovery and does not impede Varsity Tutors from filing responsive pleadings.

### B

As stated above, Rule 8(a)(2) requires that a complaint set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  If the complaint is "so vague or ambiguous that the party cannot reasonably prepare a response," the party may move for a more definite statement of the claim against it.  Rule 12(e).  "Motions for a more definite statement are generally disfavored."  *Russell v. Grace Presbyterian Vill.*, 2005 WL 1489579, at *3 (N.D. Tex. June 22, 2005) (Solis, J.) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1377 (2d ed.1990)).  The question whether to grant a motion for a more definite statement is "within the discretion of the trial court."  *Id.* (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959)).

The court concludes that the first amended complaint is not so vague or ambiguous that Varsity Tutors cannot reasonably prepare a responsive pleading.  Moreover, because the court is granting Varsity leave to file a second amended complaint, *see infra* § VI, Varsity Tutors' motion for a more definite statement is at least partially, if not entirely, moot.

Accordingly, the court denies Varsity Tutors' alternative motion for a more definite statement.

VI

Varsity opposes Varsity Tutors' motions. In the alternative, it requests leave to amend. The court grants the request.

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Because Varsity has not stated that it cannot, or is unwilling to, cure the defects that the court has identified, the court grants it 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.

\*   \*   \*

Accordingly, for the reasons explained, the court grants Varsity Tutors' motion to dismiss under Rule 12(b)(1), grants in part and denies in part its Rule 12(b)(6) motion, denies its motion for a more definite statement under Rule 12(e), and it grants Varsity leave to amend.

**SO ORDERED**.

September 17, 2021.


_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 49 -