IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VARSITY SPIRIT LLC, VARSITY BRANDS, LLC, and VARSITY SPIRIT FASHIONS & SUPPLIES, LLC, | § § § § | |
| Plaintiffs-Counterdefendants, | § § | Civil Action No. 3:21-CV-0432-D |
| VS. | § § | |
| VARSITY TUTORS, LLC | § § | |
| Defendant-Counterplaintiff, | § § | |
| and | § § | |
| VERITAS PREP LLC, | § § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiffs-counterdefendants Varsity Spirit LLC ("Varsity Spirit"), Varsity Brands,

LLC ("Varsity Brands"), and Varsity Spirit Fashions & Supplies, LLC[1] ("Varsity Spirit

Fashions") (collectively, "Varsity," unless the context indicates otherwise) sue defendant-

counterplaintiff Varsity Tutors LLC ("Varsity Tutors") and defendant Veritas Prep LLC

("Veritas") to recover on federal- and state-law trademark infringement and related claims.

Veritas moves to dismiss the claims against it under Fed. R. Civ. P. 12(b)(6). For the reasons

---

[1]Varsity Spirit Fashions & Supplies, LLC is referred to as such in the briefing but is referred to as Varsity Spirit Fashion & Supplies, LLC on ECF. The court refers to the party as its name appears in the briefing.

explained, the court denies the motion.

## I

Varsity is a company that hosts cheerleading and dance tournaments and camps.[2]  Its annual competitions feature more than one million competitors, and its camp offerings, which include cheer, dance, and band instruction, provide training to over 350,000 students nationwide, making Varsity the "largest camp operator in the world."  2d Am. Compl. ¶ 24. In addition to its hosted competitions and camps, Varsity sells apparel to over one million athletes—making it the world's leading designer and manufacturer of cheerleading and dance uniforms.  Varsity also provides "online instructional programs" through a variety of media, including its web-based platform, entitled "Varsity University," and an online library.

Varsity has registered United States trademarks for its "VARSITY" marks and its unique "V" logo.  Its "V" logo is reproduced here in black and in its oft-used scheme, blue and black:[3]



---

[2]In deciding Veritas' Rule 12(b)(6) motion, the court construes the second amended complaint in the light most favorable to Varsity, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Varsity's favor.  *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[3]The registered trademark does not claim that color is a feature of the mark, *see* "V" Trademark (U.S. Reg. No. 3782739), but Varsity alleges that it often uses the mark in this black and blue color scheme.

Its marks—including the "V" logo—have become "widely recognized by the general consuming public." *Id.* at ¶ 41. The marks have been used to promote Varsity's brand and feature on all of its paper, email, Internet, and social media advertising materials. They appear at Varsity's events and camps as well.

Veritas is a company that offers test prep and tutoring services, including via online platforms, for standardized tests and other topics.[4] Veritas has a similar clientele to Varsity (students) and offers similar services. Veritas used this logo to market its products:[5]



---

[4]Varsity Tutors purchased Veritas, which is now an affiliate of Varsity Tutors.

[5]Veritas asks the court to take judicial notice of its other marks, which it contends it uses currently. Under Fed. R. Evid. 201(b), a judicially noticed fact must be one that is not subject to reasonable dispute in that it (1) is generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. The court may take judicial notice of a trademark registration. *See, e.g.*, *Choice Hotels Int'l, Inc. v. Goldmark Hosp., LLC*, 2014 WL 642731, at *3 n.4 (N.D. Tex. Feb. 19, 2014) (Fitzwater, C.J.). But Varsity does not allege that Veritas' *current* marks infringe Varsity's registered trademark. Rather, Varsity asserts that Veritas' older mark, which the court has reproduced above, has infringed, and continues to infringe, Varsity's trademarked "V" logo. Therefore, Veritas' "current" marks are irrelevant, and the court declines Veritas' request to take judicial notice of them. *See Reneker v. Offill*, 2010 WL 1541350, at *5 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) ("[Judicial notice] should be done sparingly at the pleadings stage."); *see also Deakle v. Westbank Fishing, LLC*, 2021 WL 4133512, at *2 (E.D. La. Sept. 10, 2021) ("Courts should not take judicial notice of irrelevant facts.").

Varsity Spirit originally filed this suit by itself, against only Varsity Tutors.[6]  Varsity Tutors moved to dismiss.  Before the court ruled on the motion, Varsity Spirit amended its complaint, adding Varsity Brands and Varsity Spirit Fashions as plaintiffs.  Varsity Tutors moved again to dismiss, and the court granted the motion in part and denied it in part, and also granted Varsity leave to amend.  Varsity then filed a second amended complaint, adding Veritas—an affiliate company of Varsity Tutors—as a defendant.[7]  Varsity Tutors counterclaims against all three plaintiffs.[8]

---

[6]The court omits a discussion of the relationship between Varsity and Varsity Tutors, which involved a detailed settlement agreement that was the subject of the court's prior memorandum opinion and order and is irrelevant for purposes of this decision.  For more on their relationship and the settlement agreement that triggered the dispute between *those* parties, see the court's prior memorandum opinion and order.  *Varsity Spirit LLC v. Varsity Tutors, LLC* (*Varsity Spirit I*), No. 3:21-CV-0432-D, slip op. at 3-6 (N.D. Tex. Sept. 17, 2021) (Fitzwater, J.).

[7]Varsity alleges a claim for trademark infringement, under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), against Varsity Tutors and Veritas; a claim against both defendants for federal trademark infringement, false designation of origin, passing off, and unfair competition, under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); a claim against both defendants for trademark infringement and unfair competition under Texas common law; and a claim against Varsity Tutors for breach of contract under Texas common law.  Varsity does not re-assert the federal and state dilution claims that it alleged in its first amended complaint.  Nor does it plead a breach of contract claim against Veritas; this claim is only alleged against Varsity Tutors.

[8]Varsity Tutors counterclaims against Varsity for breach of the parties' settlement agreement, and seeks a declaratory judgment against Varsity Spirit that Varsity Tutors has not infringed any valid and enforceable trademark rights of Varsity Spirit under the Lanham Act and has not committed unfair competition or infringement under Texas common law with respect to any valid and enforceable trademark rights of Varsity Spirit.  Varsity Tutors seeks a declaratory judgment against all three counterdefendants that Varsity Tutors has not committed trademark infringement, false designation of origin, passing off, and/or unfair competition with respect to any of counterdefendants' marks.

- 4 -

Veritas now moves to dismiss Varsity's action against it under Rule 12(b)(6). Varsity opposes the motion. The court is deciding the motion on the briefs.

## II

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of Varsity's second amended complaint by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). To survive Veritas' motion to dismiss, Varsity must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise the right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

The court turns first to Veritas' motion to dismiss Varsity's[9] claims for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a).[10]

A

To prevail on a federal trademark infringement claim, Varsity must show "(1) ownership of a legally protectable mark and (2) a likelihood of confusion created by an infringing mark." *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018); *John Crane Prod. Sols., Inc. v. R2R & D, LLC*, 2012 WL 1571080, at *2 (N.D. Tex. May 4, 2012) (Fitzwater, C.J.). "Under the Lanham Act, infringement exists if a person 'uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or

---

[9]Although the court continues to use the term "Varsity" collectively, it notes that, as it concluded in *Varsity Spirit I*, only Varsity Spirit can assert the claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1), and Texas common law, and unfair competition under Texas common law, because it is the owner of the trademarks in question. *See Varsity Spirit I*, No. 3:21-CV-0432-D, slip op. at 12, 31 n.17. All plaintiffs, however, can assert claims under § 1125(a). *See id.* Varsity does not appear to dispute this, making clear in its second amended complaint that only Varsity Spirit asserts claims under 15 U.S.C. § 1114(1) and Texas common law, while alleging that all plaintiffs are asserting the claims under § 1125(a).

[10]The court divides the analysis of Varsity's claims into two parts because the parties address the claims separately. But the analysis for this section—discussed in the context of federal trademark infringement—applies to, and is dispositive of, Varsity's remaining claims against Veritas for unfair competition, passing off, and false designation of origin, and its state-law claims. *See infra* § IV.

to cause mistake or to deceive.'" *TGI Friday's, Inc. v. Great Nw. Rest., Inc.*, 652 F.Supp.2d 763, 767 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008))

B

1

Veritas challenges the first element, contending that Varsity's federal and state trademark-related claims must be dismissed because Varsity has no "exclusive right to the letter V per se." D. Mot. Dis. (ECF No. 65) at 15.[11] Veritas maintains that, "[p]utting aside that Plaintiff Varsity Spirit does not actually use an unstylized, block letter 'V' but instead only uses highly-stylized and curved designs of a letter 'V,'" *id.*, Varsity cannot prevent others from using the letter "V" because the public does not associate the letter with Varsity as a source identifier. Veritas also points to a variety of other marks that use a "V," which Veritas suggests shows that Varsity's highly stylized "V" logo lacks secondary meaning and

---

[11]Veritas makes other arguments, but they are raised for the first time in its reply. For example, Veritas appears to assert for the first time in its reply that each plaintiff—meaning Varsity Spirit, Varsity Brands, and Varsity Spirit Fashions—does not own the trademarks at issue. Even if the court were to hold that this argument has been properly raised, it has already addressed this issue both here and in *Varsity Spirit I*. *See supra* note 9.

Veritas also posits that any valid registration that Varsity has in its marks is limited to the uses Varsity specified in its registration of its mark. The court declines to consider this argument, which is raised for the first time in Veritas' reply. *See, e.g.*, *Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief.") (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.))), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

is not distinctive.[12]

Varsity responds that Veritas has misread its second amended complaint. Varsity contends that it only sues *Varsity Tutors* for breach of contract, and it does so based on a contractual provision that protects exclusive use of the letter "V." Against *Veritas*, Varsity asserts federal- and state-law trademark and common law infringement claims based on its highly-stylized "V" mark. And Varsity posits that its registration of this mark is *prima facie* evidence that the mark is inherently distinctive, satisfying the first element of its claim; Varsity maintains that Veritas cannot challenge this presumption at the motion to dismiss stage, but, even if it could, that Varsity has plausibly pleaded distinctiveness or secondary meaning.

2

To satisfy the first element of its trademark infringement claim, Varsity must plausibly plead that its "mark [is] distinctive, either inherently or by achieving secondary meaning in the mind of the public." *Am. Rice*, 518 F.3d at 329. Registration of a mark is *prima facie*

---

[12]Veritas appears to challenge any trademark that Varsity may own in the letter "V" *per se*, *see* D. Mot. Dis. (ECF No. 65) at 15 ("[A] single isolated letter, per se, is rarely capable of protection."), and contends that the letter "V" is not a source identifier of Varsity products, *id*. at 16 ("[T]he letter 'V' does not perform the role as a source identifier."). Veritas appears in this respect to challenge the first element of Varsity's trademark infringement claim asserting trademark protection based on an unregistered mark. But Veritas also challenges Varsity's *registered* mark (the highly-stylized "V" logo) as not having secondary meaning or distinctiveness. *Id*. at 20 ("The extensive use by third parties of [a] stylized 'V' mark is evidence that Plaintiffs' highly-stylized 'V' is not 'very distinctive' and 'lacks secondary meaning.'"). For the reasons explained, the court declines to accept these arguments. *See supra* § III(B)(2).

evidence that the mark is inherently distinctive. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 537 (5th Cir. 2015).[13]

Varsity alleges in the second amended complaint that Veritas has infringed Varsity's highly-stylized "V" logo (not the unregistered letter "V"), which Varsity pleads is registered with the United States Patent and Trademark Office.  At the motion to dismiss stage, Varsity's pleading of ownership and registration of its highly-stylized "V" logo raises a presumption of inherent distinctiveness and is sufficient for the court to conclude that Varsity has plausibly pleaded the first element of its trademark infringement claim.  *See Cat & Dogma, LLC v. Target Corp.*, 2021 WL 4726593, at *2 (5th Cir. Oct. 8, 2021) (per curiam) ("Target attempts to rebut the presumptive validity afforded by Dogma's registration . . . . [But] these arguments are premature.  Reaching this issue would require us to look beyond the pleadings to make a factual determination and is thus inappropriate on a motion to dismiss."); *Heritage All. v. Am. Policy Roundtable*, 2019 WL 3305609, at *5 (W.D. Tex. July 23, 2019) ("At this stage, Heritage's registration of the logo mark, which is 'prima facie evidence' that the mark is distinctive, suffices to plausibly allege its distinctiveness." (citation omitted)); *Weems Indus., Inc. v. Teknor Apex Co.*, 540 F.Supp.3d 839, 852 (N.D.

---

[13]The parties do not dispute that the presumption is *prima facie* evidence of inherent distinctiveness.  The court "presume[s] inherent distinctiveness" here because Varsity does not assert that the United States Patent and Trademark Office ("PTO") examined secondary meaning.  *See Nola Spice Designs*, 783 F.3d at 537 n.1 ("Haydel asserts, and Nola Spice does not dispute, that the PTO registered Haydel's marks based on a finding of inherent distinctiveness, and not a finding of acquired distinctiveness.  Indeed, there is no evidence in the record that the PTO examined evidence of secondary meaning.  We therefore presume inherent distinctiveness.").

Iowa 2021) ("[T]he fact that Weems was able to register chartreuse as a trademark on the principal register is sufficient to find that it has plausibly pleaded that the trademark is protectable . . . ."); *see also Thurber v. Finn Academy: An Elmira Charter Sch.*, 2022 WL 303795, at *5 (W.D.N.Y. Feb. 2, 2022) ("[T]here are significant questions regarding Plaintiff's registration of the Mark . . . [h]owever, at this stage of the proceedings, the Court cannot say as a matter of law that the presumption of protectability created by the PTO's issuance of a registration for the Mark has been rebutted."); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F.Supp.3d 196, 214-15 (S.D.N.Y. 2015).[14]

## C

### 1

Veritas contends that Varsity has not met the second element of its trademark infringement claim and that each factor in the likelihood-of-confusion analysis shows that Varsity has failed to meet its burden to plausibly plead a claim for relief.  Veritas maintains that Varsity's mark is not strong given the number of similar third-party marks; the parties' marks are not similar, and they are differently stylized "V's"; the parties do not offer similar services; the parties do not distribute their products to similar customers, and Veritas does

---

[14]The court denies Veritas' request to take judicial notice of registrations of similar "V" third-party marks.  Although the court may be able to take judicial notice of the adjudicative fact that these registrations exist, *see Choice Hotels International, Inc.*, 2014 WL 642731, at *3 n.4, these registrations would not affect the court's analysis: the court must construe the allegations of the second amended complaint in Varsity's favor, and it concludes that Varsity's pleading of registration of its mark is sufficient at this stage to plausibly plead the first element of its federal trademark infringement claim.

not sell "impulse-buy" items; there are no allegations regarding advertising similarities; there are no allegations regarding Veritas' intent; and there are no allegations of actual confusion.[15]

Varsity responds that its mark is strong and that other third-party registrations do not affect this analysis; there is sufficient similarity between the marks, and their similarity must be judged within the *context* of their use along with their color scheme; both promote educational services, and even if the services are not exactly identical, it is plausible to think Varsity might expand into Veritas' space; Veritas targets Varsity's core customers (students); the second amended complaint alleges that the parties advertise across the same media; Veritas' intent can be inferred because it has knowingly and intentionally continued to use its "V" logo despite Varsity's dispute with Varsity Tutors; there are no allegations of actual confusion, but this factor is not dispositive and Varsity has alleged confusion with Varsity Tutors' products; and it is unclear at this stage whether the parties both sell big-ticket or impulse-buy items.

---

[15]Veritas discusses facts throughout its briefing that the court cannot consider. For example, it describes its services and reproduces its logos stylized in a different way from those that are stylized in the second amended complaint. The court cannot consider these facts on a motion to dismiss, however, because "[t]he court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

2

To satisfy the second element—which requires a showing of a likelihood of confusion—Varsity must plausibly plead "a probability of confusion" rather than a mere possibility. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc*., 576 F.3d 221, 226 (5th Cir. 2009). The following digits are among those that the court can consider when determining whether there is a likelihood of confusion: (1) the strength of the plaintiff's trademark, (2) mark similarity, (3) product similarity, (4) outlet and purchaser identity, (5) advertising media similarity, (6) defendant's intent, (7) actual confusion, and (8) care exercised by potential purchasers. *Am. Rice*, 518 F.3d at 329. "The digits are a flexible and nonexhaustive list. They do not apply mechanically to every case and can serve only as guides, not as an exact calculus." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (quoting *Scott Fetzer Co. v. House of Vacuums Inc*., 381 F.3d 477, 485 (5th Cir. 2004)). "'The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the . . . factors.'" *Am. Rice*, 518 F.3d at 329 & n.19 (quoting *Conan Props., Inc. v. Conans Pizza, Inc*., 752 F.2d 145, 150 (5th Cir. 1985)).[16]

At the motion to dismiss stage, the court—without having to consider each

---

[16]The multifactor "likelihood of confusion" analysis usually presents a contested fact issue. *All. for Good Gov't*, 901 F.3d at 509. But the court may decide the issue as early as the motion to dismiss stage if the plaintiff's factual allegations are implausible. *See Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 429 (5th Cir. 2021) ("[A] district court may dismiss a complaint on the basis that a plaintiff failed to allege a likelihood of confusion.").

factor[17]—asks only whether there are sufficient facts to state a plausible claim of consumer

confusion. *See Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 430 (5th Cir.

2021) ("Adler's complaint contains sufficient factual matter, accepted as true, to state a

Lanham Act claim that is plausible on its face. We express no opinion on the merits of

Adler's claims, which would require, among other things, an evaluation of the digits of

confusion and any other relevant factors." (citation omitted)); *John Crane Prod. Sols.*, 2012

WL 1571080, at *3 ("Although the court assesses the digits of confusion when deciding

whether JCPS has adequately alleged a likelihood of confusion, when deciding a Rule

12(b)(6) motion, the court determines whether the facts alleged, taken as true, show that

JCPS's claim of a likelihood of confusion is plausible."); *MCW, Inc. v.

Badbusinessbureau.com, L.L.C.*, 2004 WL 833595, at *15 (N.D. Tex. Apr. 19, 2004) (Fish,

C.J.) ("Courts have . . . found that plaintiffs are not required to prove the likelihood of

confusion at the pleading stage."); *see also YETI Coolers, LLC v. JDS Indus., Inc.*, 300

F.Supp.3d 899, 906 (W.D. Tex. 2018) ("Whether these facts will ultimately be enough to

prove a likelihood of confusion is not the inquiry at this stage; the Court's task is only to

consider whether YETI's allegations are sufficient to make it more than merely speculative

that the company might be entitled to relief. (footnote omitted)); *Young v. Vannerson*, 612

F.Supp.2d 829, 847 (S.D. Tex. 2009) (Rosenthal, J.) (denying motion to dismiss trademark

---

[17]Nevertheless, the court will considers the allegations "in light of the eight digits." *John Crane Prod. Sols.,* 2012 WL 1571080, at *3; *IVFMD Florida, Inc. v. IVFMD, P.A.*, 2014 WL 11515574, at *6-7 (N.D. Tex. Mar. 7, 2014) (Godbey, J.) (addressing factors).

- 13 -

infringement claim without analyzing and weighing each digit because, *inter alia*, plaintiff alleged that defendant had made extensive preparations to use confusingly similar mark on products similar to those sold by plaintiffs).

The burden on Varsity to plausibly plead the element of likelihood of confusion is not onerous. The court can dismiss Varsity's claims only if the second amended complaint "as framed demonstrates that the marks are so dissimilar that, regardless of the other digits, it is implausible that there is a likelihood of confusion." *John Crane Prod. Sols.*, 2012 WL 1571080, at *3; *Jim S. Adler, P.C.*, 10 F.4th at 428-29 ("Where the factual allegations regarding consumer confusion are implausible, for example, a district court may dismiss a complaint on the basis that a plaintiff failed to allege a likelihood of confusion."); *MCW, Inc.*, 2004 WL 833595, at *15 ("[W]here the goods between two parties are unrelated as a matter of law, dismissal of a likelihood of confusion claim pursuant to a Rule 12(b)(6) motion is appropriate.").

In *Jim S. Adler*, for example, the plaintiff was a personal-injury firm and the defendant operated a lawyer-referral website. *Jim S. Adler, P.C.*, 10 F.4th at 425. The defendant paid for Internet advertising that was intentionally placed next to the plaintiff's Internet advertising. *Id.* The defendant's advertisement only contained generic words so that customers would associate the defendant's advertisement with any firm and may have clicked on the defendant's advertisement thinking it was the plaintiff's. *Id.* Further compounding the confusion, a user who clicked on the advertisement was sent to a call center, where the representative did not state that he worked for the defendant. *Id.* The court concluded that

- 14 -

these allegations were sufficient to state a claim for relief because they plausibly alleged a likelihood of confusion, and the facts showed that the use of "generic, unlabeled advertisements and misleading call-center practices" led to plausible consumer confusion. *Id.* at 429-30.

Similarly, in *John Crane* the plaintiff alleged that both it and the defendant sold "fiberglass sucker rods." *John Crane Prod. Sols.*, 2012 WL 1571080, at *1. The plaintiff sold rods under the name "FIBERROD," and the defendant sold them under the name "FINALROD." *Id.* Furthermore, the plaintiff alleged that the defendant was preparing to compete with the plaintiff. *Id.* at *3. This court concluded that these allegations were sufficient to state a claim for relief because "a likelihood of confusion is plausible." *Id.*

By contrast, in the cases where a plaintiff has failed to plausibly plead a likelihood of confusion, the marks at issue or the services offered under those marks were completely dissimilar such that it was implausible that any consumer would be confused. For example, in *Baker v. DeShong*, 90 F.Supp.3d 659 (N.D. Tex. 2014) (Cummings, J.), the plaintiff owned an "HIV Innocence Group" investigation business that sought to prove that HIV did not cause AIDS. *Id.* at 661. The defendant owned a website, www.hivinnocencegrouptruth.com, that sought to discredit the plaintiff's work. *Id.* The court held that a likelihood of confusion was not plausibly pleaded because "[n]o reasonable person would take one look at DeShong's website and believe that Baker authorized its content. No one would believe that Baker sponsored a site criticizing himself or the scientific underpinnings of his work." *Id.* at 663.

- 15 -

Similarly, in *MCW* the plaintiff was a company that assisted others with job placement and career counseling. *MCW, Inc.*, 2004 WL 833595, at *1. The defendants operated a consumer complaint website where customers could make complaints and businesses could respond to them. *Id.* The court held that the plaintiff had not plausibly pleaded consumer confusion between the plaintiff's and defendant's goods because "[n]ot only are the goods unrelated as a matter of law, but neither party is a direct competitor of the other." *Id.* at *15. Accordingly, the court held that a motion to dismiss was the proper vehicle to dispose of the plaintiff's claim. *Id.*

Here, Varsity alleges that Veritas' mark is likely to cause confusion with Varsity's highly-stylized "V" log. To support this assertion,[18] Varsity alleges that Veritas offers "test prep and tutoring services" and attaches screenshots of Veritas' offering grammar and SAT lessons. Varsity also alleges that it offers similar services—like "developmental training programs"—that it markets to a clientele (students) similar to Veritas'.

3

Varsity has met its burden at the Rule 12(b)(6) stage to plausibly plead a likelihood of confusion.

The court begins by acknowledging that the marks—reproduced again in their popular

---

[18]Varsity also points to confusion a consumer had between *Varsity Tutors*' and Varsity's services. The court declines to consider this allegation because "[l]iability for trademark infringement hinges upon whether a likelihood of confusion exists between the marks at issue," *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998), and this assertion about confusion between *Varsity Tutors*' and Varsity's marks is not sufficiently related to the *Veritas* and Varsity marks in question.

color schemes[19] for consideration in tandem with the other allegations of the second amended complaint—are certainly far from identical.

 

One is written in cursive, the other in print; one has a background design of a crest, the other does not.  And even if the court were to consider the colors, *see supra* note 19, they are not even particularly similar.  Indeed, these marks are not as similar as the ones in the cases discussed above.  For example, they are unlike the two marks, FINALROD and FIBERROD, in *John Crane*, which bear obvious similarities that may confuse a consumer.  *See John Crane Prod. Sols.*, 2012 WL 1571080, at *1.

Nevertheless, the Varsity and Veritas marks, while not identical, bear some similarities.  Both use the letter "V" standing alone and largely isolated.  And both employ

___

[19]Varsity admits that it does not have a trademark registration in this blue and black logo because its registration does not claim color as a feature of the mark.  Ps. Resp. (ECF No. 75) at 9 ("Varsity's registration does not claim color as a feature of the mark, meaning the registration is not confined to any particular color." (footnote omitted)).  Because Varsity does not have a registration in the blue and black "V" logo, and it is therefore unregistered, the presumption discussed above does not apply to this mark.  *See supra* § III(B)(2).  A color scheme, however, can still be protected as a trademark if it has "acquired secondary meaning and is non-functional."  *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008).  The court need not analyze whether Varsity has a legally protectable mark in the color scheme of its trademark because, for the reasons discussed above, Varsity has plausibly alleged that the "V" logo (without the color scheme) causes a likelihood of confusion with Veritas' mark.  *See infra* § III(C)(3).

negative space in their design to create the "V." At the very least, the logos' similarities are like those in *YETI Coolers*, in which the court held that the likelihood of confusion was plausibly pleaded. *See YETI Coolers, LLC*, 300 F.Supp.3d at 912. In *Yeti Coolers* the logos were not identical. The plaintiff's insulated drinkware contained the word "YETI" on it, *id.* at 904, and the defendant's drinkware, by contrast, contained the words "Better Yet!" *Id.* at 905. Even so, the court concluded that other factors—such as the similarity in products sold and the plaintiff's pleading that the defendant infringed intentionally—were sufficient to plausibly plead a claim for relief. *Id.* at 912.

As in *Yeti Coolers*, other factors tend to favor Varsity despite the fact that the "V" logos are relatively dissimilar. The court's inquiry, at bottom, is whether Varsity has plausibly pleaded that a reasonable person would believe that the Varsity and Veritas products have a common origin, not whether the marks are distinguishable. *See Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 193 (5th Cir. 2018) ("Even if two marks are distinguishable, we ask whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association." (internal quotation marks omitted)).

Varsity pleads facts in the second amended complaint that are sufficient to raise an inference that Veritas used its mark intentionally. Varsity alleges that Veritas continued to use its mark *after* becoming an affiliate of Varsity Tutors, and that Veritas knew that its use infringed Varsity's mark.

Moreover, the second amended complaint contains sufficient facts to plausibly plead

- 18 -

that the services offered by Varsity and Veritas are similar.  Although the services are not identical, *cf. John Crane Production Solutions*, 2012 WL 1571080, at *3 (stating that parties both sold "fiberglass sucker rods"),[20] and it remains to be seen whether Varsity can prove facts showing confusingly similar services, *see Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (internal quotation marks omitted) (internal quotation marks omitted)), the services, as alleged, are not so completely different as to warrant dismissal of an infringement claim at the pleading stage, *see, e.g.*, *MCW, Inc*., 2004 WL 833595, at *15 ("[W]here the goods between two parties are unrelated as a matter of law, dismissal of a likelihood of confusion claim pursuant to a Rule 12(b)(6) motion is appropriate . . . . MCW assists individuals with career counseling, while the defendants operate a for profit consumer complaint forum.").

For example, the second amended complaint plausibly pleads that Varsity primarily sells apparel, puts on camps, clinics, and competitions, and offers courses related to athletics. But Varsity also alleges that it offers courses on management necessary for educators, coaches, and gym owners and offers developmental training programs.  *Cf. Exxon Corp. v.*

---

[20]Veritas asks the court to take judicial notice of information on its website.  In particular, it asks the court to take judicial notice of the pricing for its classes.  The court declines to take judicial notice because Varsity disputes the accuracy of this information. *See Reneker*, 2010 WL 1541350, at *5 ("A court also cannot take judicial notice of any fact that may be in dispute.").  And even if the court were to take judicial notice of Veritas' pricing for its classes, the information would not affect the court's analysis because there are no allegations regarding Varsity's class prices, which may be similar or dissimilar.

*Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980) (acknowledging that, despite Exxon's primary purpose in selling petroleum products, it also provided mechanical work for customers, which the defendant also provided).  Taking the allegations in the second amended complaint as true, the court cannot say that these courses, particularly the "developmental training programs," are so dissimilar from the "test prep and tutoring services" that Veritas offers as to "be unrelated as a matter of law"; it is plausible that both prepare learners for standardized tests or certification.  *See Springboards to Educ., Inc. v. Kipp Found.*, 325 F.Supp.3d 704, 709, 716 (N.D. Tex. 2018) (Fish, J.) (holding that plaintiff and defendant sold "similar educational services" where plaintiff was an educational company specializing in childhood literacy and the defendant was a public charter school that trained and developed teachers (citing *Springboards to Educ., Inc. v. Kipp Found.*, 2017 WL 3917701, at *1 (N.D. Tex. Sept. 7, 2017) (Fish, J.)).  In other words, at the pleading stage, the court concludes that it is plausible that these services have *some* overlap, which could confuse a consumer of those services.  *Cf. Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 261 (5th Cir. 1980) (holding that company that sold pizza did not sell similar products as seller of sugar; the only similarity was that sugar and pizza were both edible).[21]

---

[21]Indeed, this is especially so if a consumer would expect either company to offer similar services in the future: for example, a Varsity consumer might expect Varsity to branch out into other athletic certification or test preparation services that might overlap with Veritas' test prep services. *See Elvis Presley Enters.*, 141 F.3d at 202 ("If consumers believe, even though falsely, that the natural tendency of producers of the type of goods marketed by the prior user is to expand into the market for the type of goods marketed by the subsequent user, confusion may be likely." (internal quotation marks omitted)); *Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*, 295 Fed. Appx. 630, 636 (5th Cir. 2008) (per

It bears emphasis that the court's decision about the likelihood of confusion is being made in the context of a Rule 12(b)(6) motion. At the very least, the court is unable to conclude at the pleading stage that Varsity has failed to plausibly plead such a likelihood of confusion for consumers of the services offered by Veritas and Varsity. Considering that the marks are not completely dissimilar, that Varsity and Veritas offer some relatively similar services, and that Veritas is alleged to have intentionally infringed Varsity's mark, the court cannot say that "[n]o reasonable person would take one look at [Veritas' mark] and believe that [Varsity] authorized its content." *Baker*, 90 F.Supp.3d at 663.[22]

## IV

Veritas next moves to dismiss Varsity's claims for false designation of origin, unfair competition, and passing off under the Lanham Act, 15 U.S.C. § 1125(a), and trademark infringement and unfair competition under Texas common law.[23] The parties' dispute turns on whether the court's federal trademark infringement analysis is dispositive of Varsity's other claims under § 1125(a) and state law, or whether Varsity must plead—and the court

---

curiam) ("Financial offers only mutual funds and related financial services; it does not offer insurance. Neither party has plans to offer the services currently provided by the other. Consumers, however, are familiar with numerous third-party companies that offer both financial and insurance services under the same mark.").

[22]Other factors favor Varsity as well. It appears that both companies advertise via social media. The companies also reach similar clientele.

[23]It is not clear whether there is a difference between Varsity's passing off claim and its false designation of origin claim. *See Farouk Sys., Inc. v. Costco Wholesale Corp.*, 700 F.Supp.2d 780, 786 (S.D. Tex. 2010) ("[A] false designation of origin case is very often one of 'passing off' . . . ." (internal quotation marks omitted)). The court considers them together for purposes of this analysis because Veritas does not address them separately.

must analyze—additional elements for these claims.

The court concludes that its federal trademark infringement analysis is dispositive of Varsity's federal unfair competition claims under § 1125(a). *See Bos. Prof'l. Hockey Ass'n, Inc. v. Dall. Cap & Emblem Mfg., Inc*., 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the same facts which would support an action for trademark infringement [under the Lanham Act] would also support an action for unfair competition."); *see Scott Fetzer Co.*, 381 F.3d at 484; *Rolex Watch U.S.A., Inc. v. BeckerTime, LLC*, 2022 WL 286184, at *5 (N.D. Tex. Jan. 31, 2022) (O'Connor, J.); *S & H Indus., Inc. v. Selander*, 932 F.Supp.2d 754, 762 (N.D. Tex. 2013) (Ramirez, J.) ("Unfair competition claims under the Lanham Act are governed by the same standard as those for trademark infringement, e.g., the likelihood of confusion."), *rec. adopted*, 932 F.Supp.2d 754 (N.D. Tex. 2013) (Lynn, J.).

The same is true for Varsity's state-law claims: the analysis of federal law is dispositive of the state-law claims. *See Viacom Int'l*, 891 F.3d at 184 ("A trademark infringement action under Texas common law is analyzed in the same manner as a Lanham Act claim."); *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions." (internal quotation marks omitted)); *Primesource Bldg. Prods., Inc. v. Hillman Grp., Inc*., 2015 WL 11120882, at *3 (N.D. Tex. Mar. 31, 2015) (Boyle, J.).

Finally, the court concludes that the elements of a federal trademark infringement claim are identical to a false designation of origin claim when asserted under 15 U.S.C.

§ 1125(a)(1)(A).[24] *See Shippitsa Ltd. v. Slack*, 2019 WL 3304890, at *14 (N.D. Tex. July 23, 2019) (Fitzwater, J.) ("[A § 1125(a)(1)(A) false designation of origin claim] need only allege facts showing that [the defendant] used, in commerce, a combination of words and symbols that was likely to cause confusion regarding the origin of [defendant's] products, and that [the plaintiff] was injured thereby."). Veritas' assertion that such a claim requires a "false or misleading statement of fact" is mistaken. *See GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 729 (N.D. Tex. 2010) (Fitzwater, C.J.) ("To prevail under § 1125(a)(1), GEL need not present evidence of a 'false statement.'" (footnoted omitted)). Only a claim under § 1125(a)(1)(B) requires the additional elements highlighted by Veritas.

---

[24]15 U.S.C. § 1125(a)(1) provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act shall be liable . . . .

*See Shippitsa Ltd.*, 2019 WL 3304890, at *14 n.12.[25]

Other courts are in accord.  *See Amstar Corp.*, 615 F.2d at 265 ("Since there is no likelihood of confusing defendants' goods with those of plaintiff's, the false designation of origin claim also falls."); *Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*, 295 Fed. Appx. 630, 634 (5th Cir. 2008) (per curiam) ("Likelihood of confusion is the central evidentiary test for . . . [f]alse designation of origin under the Lanham Act"); *Transparent Energy LLC v. Premiere Mktg. LLC*, 2020 WL 4678438, at *6 (N.D. Tex. July 28, 2020) (Rutherford, J.) ("Federal unfair competition, false designation of origin, and false association claims, as well as Texas common law trademark infringement claims, all have the same elements as trademark infringement under the Lanham Act."), *rec. adopted*, 2020 WL 4673102 (N.D. Tex. Aug. 12, 2020) (Lindsay, J.); *Springboards to Educ., Inc.*, 325 F.Supp.3d at 716; *Fire Prevention Techs. v. Fire Retardant Coatings of Tex., LLC*, 2015 WL 11120870, at *4 (N.D. Tex. Jan. 13, 2015) (O'Connor, J.) ("[T]he elements of trademark

---

[25]To prevail under § 1125(a)(1)(B), Varsity must establish:

> (1) A false or misleading statement of fact about a product;
> (2) Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers;
> (3) The deception was material, in that it is likely to influence the consumer's purchasing decision;
> (4) The product is in interstate commerce; and
> (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*GoForIt Entm't*, 750 F.Supp.2d at 732 n.15 (citing *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002)).

infringement and false designation of origin are identical . . . ."); *Choice Hotels Int'l, Inc. v. Patel*, 940 F.Supp.2d 532, 538 (S.D. Tex. 2013) (Costa, J.); *Philip Morris USA Inc. v. Lee*, 547 F.Supp.2d 667, 674 (W.D. Tex. 2008) (collecting out-of-district cases).[26]

It is unclear whether Varsity's second amended complaint asserts a claim under § 1125(a)(1)(A) or § 1125(a)(1)(B). But Varsity's claim tracks the language of 15 U.S.C. § 1125(a)(1)(A), and the court therefore construes the claim under this provision. *See Shippitsa Ltd.*, 2019 WL 3304890, at *14 (doing the same). The court therefore concludes that Varsity has plausibly pleaded its false designation of origin claim for the same reasons it has plausibly pleaded its federal trademark infringement claim. *See supra* § III.

---

[26]Some courts are not in accord. Others require different elements for a false designation of origin claim under § 1125(a)(1)(A). *See Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.*, 516 F.Supp.3d 633, 651 n.11 (W.D. Tex. 2021) (noting that "there are a few courts in this circuit that have decided not to apply the *Pizza Hut* elements to claims under § 1125(a)(1)(A)," but "the majority of courts within this circuit apply these elements to claims brought under both subsections"); *York Grp., Inc. v. Horizon Casket Grp., Inc*., 459 F.Supp.2d 567, 575 (S.D. Tex. 2006) ("The Fifth Circuit requires proof of five elements on false advertising and false designation of origin claims under 15 U.S.C. § 1125(a)(1)."); *see Dupart v. Roussell*, 497 F.Supp.3d 102, 112, 119 (E.D. La. 2020); *Farouk Sys., Inc.*, 700 F.Supp.2d at 786-87 (addressing trademark infringment and false designation claims separately). The court declines to follow these cases.

\*   \*   \*

Accordingly, for the reasons explained, the court denies Veritas' Rule 12(b)(6) motion to dismiss.

**SO ORDERED**.

April 28, 2022.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE